

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

### CASE NUMBER:

8:16 cv 1494 T 23 JSS

VIGO IMPORTING COMPANY,

      Plaintiff,

Vs.

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, VIGO IMPORTING COMPANY (Vigo) and sues the Defendant, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD (Hartford) and alleges:

## JURISDICTION AND VENUE

1.      Vigo is a corporation organized under the laws of the State of Florida with its principal place of business in Tampa, Florida. Hartford is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

1



2.     Hartford issued and delivered a commercial general liability policy of insurance to Vigo in Florida which was in full force and effect from September 1, 2105 through September 1, 2016.   A true and correct copy of the policy of insurance is attached hereto as Exhibit "A."

## THE POLICY OF INSURANCE

3.     The policy of insurance provides the following coverage grants:

**COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

**a.     We will pay those sums that the insured becomes legally obligated to pay as damages, because of "bodily injury" or  "property damage" to which this insurance applies.  We will  have the right and duty to defend the insured against any "suit" seeking those damages. However,   we will have no duty to  defend the insured seeking damages  for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion,  investigate any "occurrence" and    settle any claim or "suit" that may result.**
**....**

**COVERAGE B-PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

**a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal or advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured seeking damages for "personal**

> or advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

4.    The policy of insurance provides the following relevant definitions:

> 'Property damage' means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.
> ....
>
> "Your Product":
>
> a.  Means:
>
> (1) Any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) a person or organization whose business or assets you have acquired and
>
> (2)  Containers (other than vehicles), materials, parts, or other equipment furnished in connection with such goods or products.
>
> b.  Includes:
>
> (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
> (2)  The providing of or failure to provide warnings or instructions.
>
> ....

3

"Your work":

a. Means:

(1). Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

B. Includes:

(1). Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work'; and

(2). The providing of or failure to provide warnings or instructions."

....

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

....

"Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal or advertising injury" to which this insurance applies are alleged.

## THE OCTOPUS LAWSUIT AND INSURANCE CLAIM

5.     During the applicable policy period, VIGO was presented with a claim and was sued with a class action complaint and demand for jury trial (Octopus lawsuit) seeking in excess of $5,000,000.00 in damages and alleging nine separate counts: 1) Breach of Express Warranty; 2) Breach of the Implied

Warranty of Merchantability; 3) Breach of the Implied Warranty of Fitness for Particular Purpose; 4) Unjust Enrichment; 5) Injunctive Relief for Violation of California's Consumers Legal Remedies Act (California Civil Code §§1750, *et seq*); 6) Violation of California's Unfair Competition Law (California Business & Professions Code §§17200, *et seq*); 7) Violation of California's False Advertising Law (California Business & Professions Code §§17500, *et seq*); 8) Negligent Misrepresentation, and; 9) Fraud. The complaint also seeks attorneys' fees and costs. The crux of the complaint revolved around allegations that Vigo mislabeled containers indicating its product was octopus, when the product contained in the container was really squid. A true and correct copy of the Octopus lawsuit is attached hereto as Exhibit "B."

6.     Vigo promptly notified Hartford of the claim, provided Hartford with a copy of the lawsuit, and made demand that Hartford defend Vigo against the claims and indemnify Vigo from any resulting judgment.

7.     On May 13, 2016, Hartford disclaimed both its duty to defend Vigo and any duty to indemnify Vigo and refused to fulfill any of its duties under the policy of insurance or afford any coverage provided for by the policy of insurance. A copy of Hartford's denial letter is attached hereto as Exhibit "C."

8.     After Hartford refused to defend or indemnify Vigo, Vigo retained counsel to defend the Octopus lawsuit, incurring substantial costs of defense.

During defense of the Octopus lawsuit, counsel for Vigo was extended a settlement offer to resolve the Octopus lawsuit in excess of this court's jurisdictional limits of $75,000, but for less than Hartford's $2,000,000.00 "occurrence," "personal injury and advertising," and "aggregate" policy limits.

9.     Vigo again made demand upon Hartford to assume the defense, accept and pay the settlement, and obtain a release for Vigo.  Vigo informed Hartford that several allegations of the complaint in several of the counts gave rise to coverage, and under Florida law and the policy of insurance, Hartford had a duty to defend, indemnify and settle the entire Octopus lawsuit.   A copy of Vigo's demand is attached hereto Exhibit "D."

10.    On June 6, 2016, Hartford again disclaimed coverage, refused to defend or indemnify Vigo, refused to reimburse Vigo for costs of defense of the Octopus lawsuit, and refused to accept or pay the proposed settlement and obtain a release for Vigo.  A copy of Hartford claim denial letter is attached hereto as Exhibit "E."

11.    All conditions precedent to this action have been performed, been waived, or are excused.

## COUNT I

(Declaratory Judgment)

Vigo sues Hartford and alleges:

12. The allegations of paragraphs 1 through 11 are specifically re-alleged herein.

13. This is a cause of action for Declaratory Judgment pursuant to F.S. §86 *et seq.* and 28 U.S.C §2201 *et seq.* (Federal Declaratory Judgment Act) to construe and declare the rights, obligations, status, and privileges of the parties as the named insured and insurer under the above-referenced policy of insurance.

14. Vigo is presently in genuine doubt and uncertain as to its rights, status, and privileges under the policy of insurance issued by Hartford, and specifically, its rights, status, and privileges and the Hartford's obligations to defend, settle, reimburse, and indemnify Vigo under the provisions of the policy of insurance in relation to the Octopus lawsuit and its claim for damages.

15. Vigo has a bona fide, actual and present need for a declaration and construction of its status, rights, and privileges and Hartford's obligation to Vigo under the policy of insurance and specifically Hartford's duty to defend Vigo and ultimately indemnify Vigo and Vigo's right to reimbursement of counsel and right to settle the Octopus lawsuit and seek indemnity from Hartford given Hartford's denial of Vigo's claims and disclaimer of coverage, duty to defend, duty to reimburse, and duty to indemnify, although many of the allegations of the Octopus lawsuit fall within coverage, triggering Hartford's obligations under the policy.

16.    A bona fide, actual, and present dispute exists as to Vigo's rights and Hartford's obligations under the policy of insurance and this suit is not just a request for legal advice.

17.    Vigo has become obligated to retain counsel to represent it in this insurance dispute and Hartford is required to pay Vigo's reasonable attorney's fees pursuant to F.S. §627.428.

WHEREFORE, Vigo requests that the court declare and construe the policy of insurance as follows and provide the following relief:

a.    declare that Hartford has a duty to defend Vigo in the Octopus lawsuit;

b.    declare that Hartford has a duty to indemnify Vigo from any damages which may be awarded against Vigo in the Octopus lawsuit;

c.    declare that Hartford has the obligation to reimburse Vigo for all costs of defense incurred by Vigo defending the Octopus lawsuit;

d.    declare that Vigo has the right to reach a reasonable settlement directly with the plaintiff in the Octopus lawsuit and that Hartford must reimburse and indemnify Vigo for that settlement;

e.    declare that Hartford's policy provides coverage for the "occurrence" alleged in the Octopus lawsuit;

f.     Award Vigo reasonable attorneys' fees costs pursuant to F.S. 627.428 and costs for this declaratory judgment action.

g.     enter judgment in Vigo's favor and against Hartford for all defense costs incurred by Vigo defending the Octopus lawsuit and any amount paid by Vigo to settle the Octopus lawsuit, plus prejudgment interest.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Vigo hereby demands trial by jury on all issues so triable.

## COUNT II

(Breach of Contract)

Vigo sues Hartford and alleges:

18.     Vigo restates the allegations of paragraphs 1 through 11 as if specifically re-alleged herein.

19.     This is a cause of action for breach of contract.

20.     The refusal of Hartford to: 1) defend or indemnify Vigo; 2) reimburse Vigo for costs of defense or settlement; and 2) settle the Octopus lawsuit within limits each constitute a material breach of the contract of insurance.

21.     As a direct and proximate result of Hartford's material breaches, VIGO has suffered damages of costs of defense, litigation costs, and other consequential damages flowing from the breach.

22.     Vigo has become obligated to retain counsel to represent it in this insurance dispute and Hartford is required to pay Vigo's reasonable attorney's fees pursuant to F.S. §627.428.

WHEREFORE, Vigo prays that the court enter judgment in favor of Vigo for an amount in excess of jurisdiction requirements of 28 U.S.C. §1332, together with costs, interest, and attorneys' fees pursuant to F.S. §627.428.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Vigo demands trial by jury on all issues so triable.

MICHAEL V. LAURATO, ESQ.
Florida Bar No. 181447
AUSTIN & LAURATO, P.A.
1902 W. Cass Street
Tampa, Florida 33606
(813)258-0624
(813)258-4625 Facsimile
mlaurato@austinlaurato.com
TRIAL COUNSEL



### COMMON POLICY DECLARATIONS
### COMMERCIAL PACKAGE POLICY

**POLICY NUMBER**     C 5086468562


**NAMED INSURED**    VIGO IMPORTING COMPANY
**MAILING ADDRESS** PO BOX 15584

                TAMPA, FL  33684



**PRODUCER NAME**   HALCYON UNDERWRITERS, INC.
**MAILING ADDRESS** 2301 LUCIEN WAY, STE. 360

                MAITLAND, FL  32751


**POLICY PERIOD**     FROM 09/01/2015 TO 09/01/2016 **AT 12:01 A.M.**
                   **STANDARD TIME AT YOUR MAILING ADDRESS SHOWN**
                   **ABOVE.**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| COVERAGE PART | PREMIUM * |
|---|---|
| COMMERCIAL PROPERTY COVERAGE | |
| COMMERCIAL GENERAL LIABILITY COVERAGE | $107,747.27 |
| COMMERCIAL CRIME COVERAGE | |
| COMMERCIAL INLAND MARINE COVERAGE | |
| COMMERCIAL BOILER & MACHINERY COVERAGE | |
| COMMERCIAL TECHNOLOGY ERRORS & OMISSIONS COVERAGE | |
| TOTAL POLICY PREMIUM | $107,747.27 |

        * INCLUDES APPLICABLE STATES TAXES AND SURCHARGES (IF ANY)
        [REFER TO INDIVIDUAL DECLARATIONS FOR FURTHER INFORMATION]





INSURED



FORMS APPLICABLE TO ALL COVERAGE PARTS

## REFER TO INDIVIDUAL DECLARATIONS

_____
Countersignature

Chairman of the Board

Secretary

G-138915-A   (Ed. 07/00)

INSURED



**Policy Holder Notice – Florida**

# IMPORTANT INFORMATION

## FOR OUR FLORIDA POLICY HOLDERS

As a result of legislation which was signed into law effective July 1, 2013, commercial insurers are permitted to deliver insurance policies electronically in Florida. Electronic transmission of a policy constitutes delivery of the policy under Florida statute 627.421 unless the insured communicates in writing or electronically to the insurer that it does not agree to electronic delivery.

The purpose of this notice is to inform you that you have the right to receive your policy via United States mail rather than via electronic transmission by notifying us that you do not agree to electronic delivery.

To request delivery of your policy by United States mail or if you have any questions, please contact your CNA independent agent or broker.

Copyright CNA All Rights Reserved.



# IMPORTANT INFORMATION

## NOTICE - OFFER OF TERRORISM COVERAGE
## NOTICE - DISCLOSURE OF PREMIUM

**THIS NOTICE DOES NOT FORM A PART OF YOUR POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY**

You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally the Act provides that to be certified an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 reauthorization of the Act no longer requires the act of terrorism to be committed by or on behalf of a foreign interest and certified acts of terrorism now encompass, for example, a terrorist act committed against the United States government by a United States citizen when the act is determined by the federal government to be "a certified act of terrorism."

In accordance with the Act, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the federal program. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage is shown separately on your Policy Declarations, and is also included in the total premium.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

LIMITATION ON PAYMENT OF TERRORISM LOSSES (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Further, this coverage is subject to a limit on our liability, pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



G-144233-F
(Ed. 01/08)



# POLICYHOLDER NOTICE

CNA Commercial Insurance
333 S. Wabash Ave.
Chicago, Illinois 60604-4153

Regarding Your:        CNA Commercial Insurance Coverage

Dear CNA Policyholder:

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups) any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.



G-145041-A
(Ed. 05/03)

Page 1 of 1

**CNA**

# IMPORTANT INFORMATION

## FOR FLORIDA POLICYHOLDERS

### TO OBTAIN INFORMATION ABOUT YOUR COVERAGE OR TO RECEIVE ASSISTANCE IN RESOLVING A COMPLAINT, YOU MAY CALL OUR FLORIDA BRANCH OFFICE TELEPHONE NUMBER 1-877-574-0540

**PREMIUM OR CLAIM DISPUTES**

Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.





# FOOD Processor Program

General Liability - Occurrence

Renewal Declaration

| POLICY NUMBER | COVERAGE PROVIDED BY | FROM - POLICY PERIOD - TO |
|---|---|---|
| C 5086468562 | Nat'l Fire Ins Co of Hartford | 09/01/2015        09/01/2016 |
| | 333 S. WABASH | |
| | CHICAGO, IL.  60604 | |

INSURED NAME AND ADDRESS
VIGO IMPORTING COMPANY
PO BOX 15584
TAMPA, FL  33684

REFER TO ADDITIONAL NAMED INSUREDS SCHEDULE

AGENCY NUMBER
017201

AGENCY NAME AND ADDRESS
HALCYON UNDERWRITERS, INC.
2301 LUCIEN WAY, STE. 360
MAITLAND, FL  32751
Phone Number: (407)660-1881

BRANCH NUMBER
770

BRANCH NAME AND ADDRESS
FLORIDA BRANCH
2405 LUCIEN WAY
P.O. BOX 946500
MAITLAND, FL  32794
Phone Number: (407)919-3000

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing address on the dates shown above.

The Named Insured is a Corporation.

Your policy is composed of this Declarations, with the attached Common Policy Conditions, Coverage Forms, and Endorsements, if any. The Policy Forms and Endorsement Schedule shows all forms applicable to this policy at the time of policy issuance.

The Estimated Policy Premium Is                                    **
                      **Minimum Premium



Florida Insurance Surcharge                          $107.27

Total Policy Charges

Your Premium includes the following amount for
Certified Acts of Terrorism Coverage                 $1,353.00

INSURED                        Page   1 of   8

| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| C 5086468562 | VIGO IMPORTING COMPANY |
| | PO BOX 15584 |
| | TAMPA, FL 33684 |

Audit Period is Annual

In return for the payment of the premium, and subject to all the terms and conditions contained here-in, we agree to provide the insurance as stated.

## LIMITS OF INSURANCE

| DESCRIPTION | LIMIT |
|---|---|
| Each Occurrence | $1,000,000 |
| Personal & Advertising Injury | $1,000,000 |
| Medical Expense - Any One Person | $5,000 |
| Damage To Premises Rented To You Limit | $1,000,000 |
| Products/Completed Operations Aggregate | $2,000,000 |
| General Aggregate | $2,000,000 |
| Employee Benefits Liability Coverage | |
|     Each Employee | $1,000,000 |
|     Aggregate | $2,000,000 |

## SCHEDULE OF LOCATIONS AND COVERAGES

| COVERAGE/HAZARD DESCRIPTION | EXPOSURE | PREMIUM BASIS | RATE | ESTIMATED PREMIUM |
|---|---|---|---|---|
| **POLICY LEVEL COVERAGES** | | | | |
| Employee Benefits Liability | 170 Each Employee | INCL | | $46 |
| Deductible Each Employee | $1,000 | | | |
| Fire Damage Legal Liability - Increased Limits | FLAT CHARGE | | | $160 |
| Manufacturers General Liability Extension | | (SL) | 2% | $2,073 |

**Location 1**
4701 W COMANCHE AVENUE
TAMPA, FL 33614

**Class Code 53374**
Food Products Manufacturing (dry)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | 39,000,000 | (S) | .526 | $20,514 |
| Products & Completed Operations | 39,000,000 | (S) | .821 | $32,019 |

| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| C 5086468562 | VIGO IMPORTING COMPANY |
| | PO BOX 15584 |
| | TAMPA, FL  33684 |

## SCHEDULE OF LOCATIONS AND COVERAGES

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| Premises & Operations | 25,000,000 (S) | .435 | $10,875 |
|---|---|---|---|
| Products & Completed Operations | 25,000,000 (S) | .497 | $12,425 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| Premises & Operations | 28,000,000 (S) | .451 | $12,628 |
|---|---|---|---|
| Products & Completed Operations | 28,000,000 (S) | .532 | $14,896 |

| | LOCATION SUB-TOTAL | $103,357 |
|---|---|---|

**Location    2**
4601 W COMANCHE AVE
TAMPA, FL  33614

**Class Code 53374**
Food Products Manufacturing (dry)

| Premises & Operations | IF ANY | (S) | .526 | $0 |
|---|---|---|---|---|
| Products & Completed Operations | IF ANY | (S) | .821 | $0 |

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| Premises & Operations | IF ANY | (S) | .435 | $0 |
|---|---|---|---|---|
| Products & Completed Operations | IF ANY | (S) | .497 | $0 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| Premises & Operations | IF ANY | (S) | .451 | $0 |
|---|---|---|---|---|
| Products & Completed Operations | IF ANY | (S) | .532 | $0 |

| | LOCATION SUB-TOTAL | $0 |
|---|---|---|



**Location    3**
4521 W COMANCHE AVE
TAMPA, FL  33614

**Class Code 53374**
Food Products Manufacturing (dry)



**POLICY NUMBER**
C 5086468562

**INSURED NAME AND ADDRESS**
VIGO IMPORTING COMPANY
PO BOX 15584
TAMPA, FL  33684

### SCHEDULE OF LOCATIONS AND COVERAGES

**Class Code 53374**

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .526 | $0 |
| Products & Completed Operations | IF ANY | (S) | .821 | $0 |

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .435 | $0 |
| Products & Completed Operations | IF ANY | (S) | .497 | $0 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .451 | $0 |
| Products & Completed Operations | IF ANY | (S) | .532 | $0 |
| | | LOCATION SUB-TOTAL | | $0 |

**Location    4**
4507 W COMANCHE AVE
TAMPA, FL  33614

**Class Code 53374**
Food Products Manufacturing (dry)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .526 | $0 |
| Products & Completed Operations | IF ANY | (S) | .821 | $0 |

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .435 | $0 |
| Products & Completed Operations | IF ANY | (S) | .497 | $0 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .451 | $0 |
| Products & Completed Operations | IF ANY | (S) | .532 | $0 |
| | | LOCATION SUB-TOTAL | | $0 |

**POLICY NUMBER**
C 5086468562

**INSURED NAME AND ADDRESS**
VIGO IMPORTING COMPANY
PO BOX 15584
TAMPA, FL  33684

## SCHEDULE OF LOCATIONS AND COVERAGES

**Location     5**
5510 HESPERIDES STREET
TAMPA, FL  33614

**Class Code 53374**
Food Products Manufacturing (dry)

| Premises & Operations | IF ANY | (S) | .526 | $0 |
| Products & Completed Operations | IF ANY | (S) | .821 | $0 |

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| Premises & Operations | IF ANY | (S) | .435 | $0 |
| Products & Completed Operations | IF ANY | (S) | .497 | $0 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| Premises & Operations | IF ANY | (S) | .451 | $0 |
| Products & Completed Operations | IF ANY | (S) | .532 | $0 |

**Class Code 61217**
Buildings or Premises - bank or office - mercantile or manufacturing - maintained by the insured, other than not for profit. Products-completed operations are subject to the General Aggregate Limit.

| Premises & Operations | 5,000 | (A) | 54.383 | $272 |

|  |  | **LOCATION SUB-TOTAL** | $272 |

**Location     6**
5501-5515 ANDERSON ROAD
TAMPA, FL  33614

**Class Code 53374**
Food Products Manufacturing (dry)

| Premises & Operations | IF ANY | (S) | .526 | $0 |
| Products & Completed Operations | IF ANY | (S) | .821 | $0 |

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| Premises & Operations | IF ANY | (S) | .435 | $0 |



POLICY NUMBER
C 5086468562

INSURED NAME AND ADDRESS
VIGO IMPORTING COMPANY
PO BOX 15584
TAMPA, FL 33684

## SCHEDULE OF LOCATIONS AND COVERAGES

**Class Code 53376**

| | | | | |
|---|---|---|---|---|
| Products & Completed Operations | IF ANY | (S) | .497 | $0 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .451 | $0 |
| Products & Completed Operations | IF ANY | (S) | .532 | $0 |
| | LOCATION SUB-TOTAL | | | $0 |

**Location    7**
4705 W COMANCHE AVE
TAMPA, FL 33614

**Class Code 53374**
Food Products Manufacturing (dry)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .526 | $0 |
| Products & Completed Operations | IF ANY | (S) | .821 | $0 |

**Class Code 53376**
Food Products Manufacturing (not dry - in glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .435 | $0 |
| Products & Completed Operations | IF ANY | (S) | .497 | $0 |

**Class Code 53377**
Food Products Manufacturing (not dry - in other than glass containers)

| | | | | |
|---|---|---|---|---|
| Premises & Operations | IF ANY | (S) | .451 | $0 |
| Products & Completed Operations | IF ANY | (S) | .532 | $0 |
| | LOCATION SUB-TOTAL | | | $0 |

| | | | |
|---|---|---|---|
| Premium Necessary to Meet | Employee Benefits  Minimum | | $379 |

**POLICY NUMBER**
C 5086468562

**INSURED NAME AND ADDRESS**
VIGO IMPORTING COMPANY
PO BOX 15584
TAMPA, FL  33684

## ADDITIONAL NAMED INSUREDS SCHEDULE

TONY ALESSI JR

BELLA SALES INC

CAN AMERICA INC

ALFRED S ALESSI



| POLICY NUMBER | INSURED NAME AND ADDRESS |
|---|---|
| C 5086468562 | VIGO IMPORTING COMPANY |
| | PO BOX 15584 |
| | TAMPA, FL  33684 |

## FORMS AND ENDORSEMENTS SCHEDULE

| Form Number | | Form Title |
|---|---|---|
| CG0001 | 04/2013 | Commercial General Liability Coverage Form |
| CG0220 | 03/2012 | Florida Changes - Cancellation and Nonrenewal |
| CG2147 | 12/2007 | Employment-Related Practices Exclusion |
| CG2170 | 01/2008 | Cap on Losses for Certified Acts of Terrorism |
| CG2504 | 05/2009 | Designated Location(s) General Aggregate Limit |
| G132263B | 11/2004 | Amendatory Endorsement - Pollution Exclusion |
| G144041D | 12/2010 | Manufacturers General Liability Extension Endt |
| G144291A | 03/2003 | Economic And Trade Sanctions Condition |
| G145658A | 11/2003 | Exclusion - Silica |
| G15104A | 10/1989 | Employee Benefits Liability Supplemental Schedule |
| G300304A | 05/2006 | Fungi/Mold/Mildew/Yeast/Microbe Exclusion and Wate |
| G43316C | 06/1998 | Exclusion - Asbestos |
| G43815C | 08/2001 | Employee Benefits Liability Coverage |
| G55157B | 02/1988 | Premium Bases |
| IL0003 | 09/2007 | Calculation of Premium |
| IL0017 | 11/1998 | Common Policy Conditions |
| IL0021 | 04/1998 | Nuclear Energy Liab Exclusion Endt (Broad Form) |

## *** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY ***

| Form Number | | Form Title |
|---|---|---|
| CNA77863FL | 02/2014 | Policyholder Notice Florida |
| G144233F | 01/2008 | Notice - Offer of Terrorism Disclosure of Premium |
| G145041A | 05/2003 | IMP INF Economic And Trade Sanctions Condition |
| G18683A09 | | Important Information for Florida Policyholders |

Countersignature

*Thomas F. Motamed*
Chairman of the Board

*Jonathan Kantor*
Secretary

P-55170-A (Ed. 01/86)                    INSURED                    Page   8 of   8



G-15104-A
(Ed. 10/89)

ATTACHED TO POLICY NO.

# EMPLOYEE BENEFITS LIABILITY COVERAGE – SUPPLEMENTAL SCHEDULE

As per the Policy Declarations this policy provides coverage, subject to the Limits of Insurance indicated below:

**LIMITS OF INSURANCE**

Each Employee

Aggregate

**REFER
TO
DECLARATIONS**

Deductible                              Each Employee

Employee Benefit Programs other than those specified in the Definitions Section of Employee Benefits Liability Coverage Endorsement:

**PREMIUM COMPUTATION**

| Estimated Number Of Employees | Rate Per Employee | Estimated Premium | Minimum Premium |
|---|---|---|---|
| First 1000 | **REFER TO** | | |
| Next 1000 | **DECLARATIONS** | | INCLUDED |
| Over 2000 | | | INCLUDED |
| | Total | **REFER TO DECLARATIONS** | |



500300062508546865627927

REFER TO THE POLICY DECLARATIONS PAGE FOR OTHER FORMS AND ENDORSEMENTS ATTACHED TO AND FORMING A PART OF THIS POLICY.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

Copyright, Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

Copyright, Insurance Services Office, Inc., 2012

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

 Copyright, Insurance Services Office, Inc., 2012

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

 Copyright, Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury."

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or



(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

b. **Material Published With Knowledge Of Falsity**

   "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

   "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

   "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

   "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

   "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

   "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

h. **Wrong Description Of Prices**

   "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

Copyright, Insurance Services Office, Inc., 2012
CG 00 01 04 13

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

o. **War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 Copyright, Insurance Services Office, Inc., 2012

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. Any Insured

To any insured, except "volunteer workers."

b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

d. Workers' Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard."

g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Copyright, Insurance Services Office, Inc., 2012

CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I – Coverage A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

  Copyright, Insurance Services Office, Inc., 2012  CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

 Copyright, Insurance Services Office, Inc., 2012 CG 00 01 04 13

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

Copyright, Insurance Services Office, Inc., 2012          CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 Copyright, Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

     (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       (a) You;

       (b) Others trading under your name; or

       (c) A person or organization whose business or assets you have acquired; and

     (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

     (1) Work or operations performed by you or on your behalf; and

     (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

     (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

     (2) The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 2012

CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
## CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

   **(a)** A material misstatement or misrepresentation; or

   **(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

(4) A substantial change in the risk covered by the policy; or

(5) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

 Copyright, Insurance Services Office, Inc., 2011

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

    If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

    **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

    **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 2011

**CG 02 20 03 12**

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 25 04 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Designated Location(s):**

Each of your "locations" owned by
or rented to you for which coverage
applies in this policy

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location," and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard," and for medical expenses under Coverage C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location." Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.



Copyright, Insurance Services Office, Inc., 2008

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

     Copyright, Insurance Services Office, Inc., 2008     CG 25 04 05 09

**CNA**

G-132263-B
(Ed. 11/04)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDATORY ENDORSEMENT – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced by the following:

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location

in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

   (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way


5002000625085468562794D


G-132263-B
(Ed. 11/04)

responding to, or assessing the effects of, "pollutants."

Paragraph **(2)** does not apply to liability for damages because of "property damage" that is not excluded by Paragraph **(1)** above. However, this exception to

Paragraph **(2)** does not apply to any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement or claim or "suit" solely by or on behalf of a governmental authority.

Includes copyrighted material of the Insurance Services Office, Inc. with its permission.

**CNA**

G-144041-D
(Ed. 12/10)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## MANUFACTURERS' GENERAL LIABILITY EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The changes this endorsement makes to coverage provided by the Commercial General Liability Coverage Part are void with respect to any coverage that has been excluded by another endorsement attached to this policy.

Coverage afforded under this extension of coverage endorsement does not apply to any person or organization covered as an additional insured on any other endorsement now or hereafter attached to this Coverage Part.

### SCHEDULE

Coverage is summarized below. For particulars and limitations affecting each coverage, please refer to the corresponding policy provisions in the body of this endorsement.

1. **Property Damage – Patterns, Molds And Dies**
2. **Additional Insured – Blanket Vendors**
3. **Miscellaneous Additional Insureds**
   8 additional insured extensions.
4. **Broad Named Insured/Newly Formed Or Acquired Organizations**
5. **Joint Ventures/Partnership/Limited Liability Companies**
   Coverage for your interest in such terminated or ended organizations.
6. **Partnership Or Joint Ventures**
   Partnership includes a limited liability partnership.
7. **Incidental Health Care Malpractice Coverage**
8. **Supplementary Payments**
   Cost of bail bonds increased to $2,500.
   Daily loss of earnings increased to $1,000.
9. **Medical Payments**
   Limits increased to $15,000.
   Reporting increased to three years from the date of accident.
10. **Non-owned Watercraft**
    Increased to 55 feet.
11. **Non-owned Aircraft**
12. **Legal Liability – Damage To Premises**
    Extended perils.
    Limit increased to $200,000.

13. **Broad Knowledge of Occurrence**
14. **Notice of Occurrence**
15. **Unintentional Failure To Disclose Hazards**
16. **Expanded Personal And Advertising Injury**
17. **Bodily Injury – Extension of Coverage**
18. **Expected Or Intended Injury**
    Reasonable force – bodily injury or property damage.
19. **Liberalization Clause**
20. **Property Damage - Elevators**
21. **Blanket Waiver of Subrogation**
    Waiver of subrogation where required by written contract or written agreement.
22. **In Rem Actions**
23. **Primary And Non-Contributory To Other Insurance**
24. **Limited Contractual Liability for Personal and Advertising Injury**



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1.  **PROPERTY DAMAGE – PATTERNS, MOLDS AND DIES**

    Paragraphs **(3)** and **(4)** of Exclusion **j.** Damage to Property of **Section I – Exclusions** do not apply to patterns, molds or dies in the care, custody or control of the insured if the patterns, molds or dies are not being used to perform operations at the time of loss. A limit of insurance of $25,000 per policy period applies to **Property Damage – Patterns, Molds And Dies** and is included within the General Aggregate Limit as described in **Section III – Limits Of Insurance.**

    The insurance afforded by this Provision **1.** is excess over any valid and collectible property insurance (including any deductible) available to the insured, and the Other Insurance Condition is changed accordingly.

2.  **ADDITIONAL INSURED – BLANKET VENDORS**

    **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization (referred to below as vendor) with whom you agreed, because of a written contract or written agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

    1.  The insurance afforded the vendor does not apply to:

        a.  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

        b.  Any express warranty unauthorized by you;

        c.  Any physical or chemical change in the product made intentionally by the vendor;

        d.  Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

        e.  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

        f.  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    g.  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    h.  "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omission or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        (1)  The exceptions contained in Subparagraphs **d.** or **f.;** or

        (2)  Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

    2.  This Provision **2.** does not apply to:

        a.  Any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products;

        b.  Any vendor specifically scheduled as an additional insured by endorsement; or

        c.  Any of "your products" for which coverage is excluded by endorsement.

    3.  This Provision **2.** does not apply if "bodily injury" or "property damage" included within the "products-completed operations hazard" is excluded by endorsement.

3.  **MISCELLANEOUS ADDITIONAL INSUREDS**

    **Section II – Who Is An Insured** is amended to include as an insured any person or organization (called additional insured) described in Paragraphs **3.a.** through **3.h.** below whom you are required to add as an additional insured on this policy under a written contract or written agreement but the written contract or written agreement must be:

    1.  Currently in effect or becoming effective during the term of this policy; and

    2.  Executed prior to the "bodily injury," "property damage" or "personal injury and advertising injury," but

    Only the following persons or organizations are additional insureds under this endorsement and coverage provided to such additional insureds is limited as provided herein:

        a.  **Additional Insured – "Your Work"**

            That person or organization for whom you do work is an additional insured solely for liability

G-144041-D
(Ed. 12/10)

due to your negligence specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

The insurance provided to the additional insured is limited as follows:

(1) The Limits of Insurance applicable to the additional insured are those specified in the written contract or written agreement or in the Declarations of this policy, whichever is less. These Limits of Insurance are inclusive of, and not in addition to, the Limits of Insurance shown in the Declarations.

(2) Coverage for the additional insured for "your work" that is included in the "products-completed operations hazard" is afforded only if this Coverage Part provides such coverage, and only if the written contract or written agreement requires you to provide such coverage.

(3) The insurance provided to the additional insured does not apply to:

   (a) "Bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering or failure to render any professional services; or

   (b) "Bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your work" that is excluded by endorsement.

b. **State or Governmental Agency or Subdivision or Political Subdivisions**

A state or governmental agency or subdivision or political subdivision subject to the following provisions:

(1) This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent, or control and to which this insurance applies:

   (a) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decorations and similar exposures; or

   (b) The construction, erection, or removal of elevators; or

(2) This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality.

c. **Controlling Interest**

Any persons or organizations with a controlling interest in you but only with respect to their liability arising out of:

(1) Their financial control of you; or

(2) Premises they own, maintain or control while you lease or occupy these premises.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for such additional insured.

d. **Managers or Lessors of Premises**

A manager or lessor of premises but only with respect to liability arising out of the ownership, maintenance or use of that specific part of the premises leased to you and subject to the following additional exclusions:

This insurance does not apply to:

(1) Any "occurrence" which takes place after you cease to be a tenant in that premises; or

(2) Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

e. **Mortgagee, Assignee or Receiver**

A mortgagee, assignee or receiver but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of a premises by you.

This insurance does not apply to structural alterations, new construction or demolition operations performed by or for such additional insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

50020000250854683567942

G-144041-D
(Ed. 12/10)

**f. Owners/Other Interests – Land Leased**

An owner or other interest from whom land has been leased by you but only with respect to liability arising out of the ownership, maintenance or use of that specific part of the land leased to you and subject to the following additional exclusions:

This insurance does not apply to:

**(1)** Any "occurrence" which takes place after you cease to lease that land; or

**(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**g. Co-owner of Insured Premises**

A co-owner of a premises co-owned by you and covered under this insurance but only with respect to the co-owners liability as co-owner of such premises.

**h. Lessor of Equipment**

Any person or organization from whom you lease equipment. Such person or organization are insureds only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person or organization. A person's or organization's status as an insured under this endorsement ends when their written contract or agreement with you for such leased equipment ends.

With respect to the insurance afforded these additional insureds, the following additional exclusions apply:

This insurance does not apply:

**(1)** To any "occurrence" which takes place after the equipment lease expires; or

**(2)** To "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of such additional insured.

Any insurance provided to an additional insured designated under Paragraphs **b.** through **h.** above does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."

**4. BROAD NAMED INSURED/NEWLY FORMED OR ACQUIRED ORGANIZATIONS**

**A.** Any organization other than a partnership, joint venture or limited liability company, over which a Named Insured shown in the Declarations maintained an ownership interest of more than 50% on the effective date of this policy and on the date of loss will qualify as

a Named Insured if there is no other similar insurance afforded to that organization or would have been afforded but for the exhaustion of the limits of liability, cancellation or expiration of such insurance.

**B.** Paragraph **3.a.** of **Section II – Who Is An Insured** is deleted and replaced by the following:

Coverage under this provision is afforded only until the end of the policy period or the next anniversary of this policy's effective date after you acquire or form the organization, whichever is earlier.

**C.** This Provision **4.** does not apply to any organization for which coverage is excluded by endorsement.

**5. JOINT VENTURES / PARTNERSHIP / LIMITED LIABILITY COMPANY COVERAGE**

**A.** The following is added to **Section II – Who Is An Insured:**

**4.** You are an insured when you had an interest in a joint venture, partnership or limited liability company which terminated or ended prior to or during this policy period but only to the extent of your interest in such joint venture, partnership or limited liability company. This coverage does not apply:

**a.** Prior to the termination date of any joint venture, partnership or limited liability company; or

**b.** If there is other valid and collectible insurance purchased specifically to insure the partnership, joint venture or limited liability company.

**B.** The last paragraph of **Section II – Who Is An Insured** is deleted and replaced by the following:

Except as provided under the Manufactures' General Liability Extension Endorsement or by the attachment of another endorsement (if any), no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**6. PARTNERSHIP OR JOINT VENTURES**

Paragraph **1.b.** of **Section II – Who Is An Insured** is deleted and replaced by the following:

**b.** A partnership (including a limited liability partnership) or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**7. INCIDENTAL HEALTH CARE MALPRACTICE COVERAGE**

**A.** With respect only to "bodily injury" that arises out of a "health care incident," **Coverage A – Bodily Injury**

and **Property Damage Liability** of **Section I – Coverages** is amended to replace **Insuring Agreement** Paragraphs **1.b.(1)** and **1.b.(2)** with the following:

    **b.** This insurance applies to "bodily injury" only if you are not in the business of providing professional health care services, and only if:

        **(1)** The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory." For the purpose of this insurance:

            **(a)** "Bodily injury" caused by a "health care incident" will be considered caused by an "occurrence"; and

            **(b)** All acts, errors or omissions that are logically connected by any common fact, circumstance, situation, transaction, event, advice or decision will be considered to constitute a single "occurrence";

        **(2)** The "bodily injury" occurs during the policy period. All "bodily injury" arising from an "occurrence" will be deemed to have occurred at the time of the first act, error, or omission that is part of the "occurrence"; and

**B.** With respect only to the insurance provided by this Provision 7., Exclusion **2.e. (Employer's Liability)** of **Section I – Coverage A – Bodily Injury and Property Damage**, is amended to append the following:

    Only for "bodily injury" not covered by other liability insurance (including qualified self insurance) available to the insured (or which would be available but for exhaustion of its limits), this exclusion does not apply to "bodily injury" that arises out of a "health care incident."

**C.** **Section V – Definitions** is amended to add the following new definition:

    "Health care incident" means a negligent act, error or omission by your "employees" or "volunteer workers" working on your behalf in the rendering of or failure to render professional health care services in any of the following capacities, or the related furnishing of food, beverages, medical supplies or appliances:

    **a.** Physician;

    **b.** Nurse;

    **c.** Emergency medical technician;

    **d.** Paramedic;

    **e.** Chiropractor;

    **f.** Dentist;

    **g.** Athletic trainer;

    **h.** Audiologist;

    **i.** Physical therapist;

    **j.** Psychologist;

    **k.** Speech therapist;

    **l.** Other allied health professional; or

    **m.** Provider of first aid or Good Samaritan services rendered in an emergency and for which no payment is demanded or received.

**D.** **Section I - Coverages** is amended to add the following additional exclusions to Paragraph **2. Exclusions of Coverage A – Bodily Injury and Property Damage Liability.** These new exclusions apply only to this Incidental Health Care Malpractice Coverage:

    This insurance does not apply to:

    **Dishonesty or Crime**

    Any dishonest, criminal or malicious act, error or omission.

    **Clinical Trials / Product Testing**

    Acts, errors or omissions that occur in the course of human clinical trials or product testing.

    **Medicare/Medicaid Fraud**

    Medicare or Medicaid fraud or abuse.

    **Services Excluded by Endorsement**

    Any "health care incident" for which coverage is excluded by endorsement.

**E.** **Section V – Definitions** is amended to add the following subparagraph to Paragraph **f.** of the definition of "insured contract":

    Paragraph **f.** does not include that part of any contract or agreement:

        **(4)** Under which you assume another's tort liability for "bodily injury" arising out of the rendering of or failure to render professional health care services.

**F.** **Section II – Who Is An Insured** is amended as follows:

    **1.** Except for licensed physicians, your "employees" are insureds with respect to:

        **a.** "bodily injury" to a co-"employee" while in the course of the co-"employee's" employment by you or while performing duties related to the conduct of your business; and

        **b.** "bodily injury" to a "volunteer worker" while performing duties related to the conduct of your business;

5002000082508458562794J

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

G-144041-D
(Ed. 12/10)

when such "bodily injury" arises out of a "health care incident."

2. Except for licensed physicians, your "volunteer workers" are insureds with respect to:

  a. "bodily injury" to a co-"volunteer worker" while performing duties related to the conduct of your business; and

  b. "bodily injury" to an "employee" while in the course of the "employee's" employment by you or while performing duties related to the conduct of your business;

  when such "bodily injury" arises out of a "health care incident."

3. Paragraphs **2.a. (1)(a), (b)** and **(c)** of **Section II – Who Is An Insured** do not apply to "bodily injury" for which insurance is provided this Provision **7.**

4. Paragraph **2.a.(1)(d)** of **Section II – Who Is An Insured** is deleted and replaced by the following new Paragraph **2.a.(3):**

  However, none of these "employees" or "volunteer workers" are insureds for:

  (3) "Bodily injury," "property damage" or "personal and advertising injury" arising out of his or her rendering of or failure to render professional health care services if he or she is a licensed physician.

G. With respect to the insurance provided by this Provision **7.**, the following is added to Paragraph **4.b.(1)** of **Section IV – Commercial General Liability Conditions:**

  To the extent this insurance applies, it is excess over any of the other insurance (including qualified self insurance), whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

8. **SUPPLEMENTARY PAYMENTS**

A. Under **Section I – Supplementary Payments – Coverages A** and **B**, Paragraph **1.b.**, the limit of $250 shown for the cost of bail bonds is replaced by $2,500.

B. In Paragraph **1.d.**, the limit of $250 shown for daily loss of earnings is replaced by $1,000.

9. **MEDICAL PAYMENTS**

A. Paragraph **7. Medical Expense Limit**, of **Section III – Limits of Insurance** is deleted and replaced by the following:

  7. Subject to Paragraph **5.** above (the Each Occurrence Limit), the Medical Expense Limit is the most we will pay under **Section – I – Coverage C** for all medical expenses because of

"bodily injury" sustained by any one person. The Medical Expense Limit is the greater of:

  (1) $15,000; or

  (2) The amount shown in the Declarations for Medical Expense Limit.

B. This Provision **9.** does not apply if **Section I – Coverage C Medical Payments** is excluded either by the provisions of the Coverage Part or by endorsement.

C. Paragraph **1.a.(3)(b)** of **Section I – Coverage C – Medical Payments**, is replaced by the following:

  (b) The expenses are incurred and reported to us within three years of the date of the accident; and

10. **NON-OWNED WATERCRAFT**

Under **Section I – Coverage A – Bodily Injury and Property Damage**, Exclusion **2.g.**, subparagraph **(2)** is deleted and replaced by the following.

  (2) A watercraft you do not own that is:

  (a) Less than 55 feet long; and

  (b) Not being used to carry persons or property for a charge.

11. **NON-OWNED AIRCRAFT**

Exclusion **2.g.** of **Section I – Coverage A – Bodily Injury and Property Damage**, does not apply to an aircraft you do not own, provided that:

1. The pilot in command holds a currently effective certificate issued by the duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

2. It is rented with a trained, paid crew; and

3. It does not transport persons or cargo for a charge.

12. **LEGAL LIABILITY – DAMAGE TO PREMISES**

A. Under **Section I – Coverage A – Bodily Injury and Property Damage 2. Exclusions**, Exclusion **j.** is replaced by the following.

  "Property damage" to:

  (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

  (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

G-144041-D
(Ed. 12/10)

(3)  Property loaned to you;

(4)  Personal property in the care, custody or control of the insured;

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises:

(1)  rented to you;

(2)  temporarily occupied by you with the permission of the owner, or

(3)  to the contents of premises rented to you for a period of 7 or fewer consecutive days.

A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III – Limits Of Insurance.**

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**B.**  Under **Section I – Coverage A – Bodily Injury and Property Damage** the last paragraph of **2. Exclusions** is deleted and replaced by the following.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner or to the contents of premises rented to you for a period of 7 or fewer consecutive days.

A separate limit of insurance applies to this coverage as described in **Section III – Limits Of Insurance.**

**C.**  Paragraph **6. Damage To Premises Rented To You** Limit of **Section III – Limits Of Insurance** is replaced by the following:

**6.**  Subject to Paragraph **5.** above, (the Each Occurrence Limit), the Damage To Premises

Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises while rented to you or temporarily occupied by you with the permission of the owner, including contents of such premises rented to you for a period of 7 or fewer consecutive days. The Damage To Premises Rented To You Limit is the greater of:

**a.**  $200,000; or

**b.**  The Damage To Premises Rented To You Limit shown in the Declarations.

**D.**  Paragraph **4.b.(1)(a)(ii)** of **Section IV – Commercial General Liability Conditions** is deleted and replaced by the following:

(ii)  That is property insurance for premises rented to you or temporarily occupied by you with the permission of the owner; or

**E.**  This Provision **12.** does not apply if Damage To Premises Rented To You Liability under **Section I – Coverage A** is excluded either by the provisions of the Coverage Part or by endorsement.

**13.  BROAD KNOWLEDGE OF OCCURRENCE**

You must give us or our authorized representative notice of an "occurrence," offense, claim, or "suit" only when the "occurrence," offense, claim or "suit" is known to:

(1)  You, if you are an individual;

(2)  A partner, if you are a partnership;

(3)  An executive officer or the employee designated by you to give such notice, if you are a corporation; or

(4)  A manager, if you are a limited liability company.

**14.  NOTICE OF OCCURRENCE**

The following is added to Paragraph **2.** of **Section IV – Commercial General Liability Conditions – Duties In The Event of Occurrence, Offense Claim or Suit:**

Your rights under this Coverage Part will not be prejudiced if you fail to give us notice of an "occurrence," offense, claim or "suit" and that failure is solely due to your reasonable belief that the "bodily injury" or "property damage" is not covered under this Coverage Part. However, you shall give written notice of this "occurrence," offense, claim or "suit" to us as soon as you are aware that this insurance may apply to such "occurrence," offense claim or "suit."

**15.  UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

Based under our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not deny coverage under this Coverage Part because of such failure.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

50020062506846656627944

G-144041-D
(Ed. 12/10)

**16. EXPANDED PERSONAL AND ADVERTISING INJURY**

A. The following is added to **Section V – Definitions,** the definition of "personal and advertising injury":

   h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

   (1) Not done intentionally by or at the direction of:

   (a) The insured; or

   (b) Any "executive officer," director, stockholder, partner, member or manager (if you are a limited liability company) of the insured; and

   (2) Not directly or indirectly related to the employment, prospective employment, past employment or termination of employment of any person or persons by any insured.

B. Exclusions of **Section I – Coverage B – Personal and Advertising Injury Liability** is amended to include the following:

   **Discrimination Relating To Room, Dwelling or Premises**

   Caused by discrimination directly or indirectly related to the sale, rental, lease or sub-lease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured.

   **Fines Or Penalties**

   Fines or penalties levied or imposed by a governmental entity because of discrimination.

C. This Provision **16.** does not apply if **Section I – Coverage B – Personal And Advertising Injury Liability** is excluded by endorsement.

**17. BODILY INJURY**

**Section V – Definitions,** the definition of "bodily injury" is changed to read:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

**18. EXPECTED OR INTENDED INJURY**

Exclusion a. of **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**19. LIBERALIZATION CLAUSE**

If we adopt a change in our forms or rules which would broaden coverage for manufacturers under this endorsement without an additional premium charge, your policy will automatically provide the additional coverages as of the date the revision is effective in your state.

**20. PROPERTY DAMAGE – ELEVATORS**

With respect to Exclusions of **Section I – Coverage A,** Paragraphs **(3), (4)** and **(6)** of Exclusion **j.** and Exclusion **k.** do not apply to the use of elevators.

The insurance afforded by this Provision **20.** is excess over any valid and collectible property insurance (including any deductible) available to the insured, and the Other Insurance Condition is changed accordingly.

**21. BLANKET WAIVER OF SUBROGATION**

The **Transfer Of Rights Of Recovery Against Others To Us** Condition (**Section IV – Commercial General Liability Conditions**) is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of:

   1. Your ongoing operations; or

   2. "Your work" included in the "products-completed operations hazard."

However, this waiver applies only when you have agreed in writing to waive such rights of recovery in a contract or agreement, and only if the contract or agreement:

   1. Is in effect or becomes effective during the term of this policy; and

   2. Was executed prior to loss.

**22. IN REM ACTIONS**

Any action in rem against property owned, operated by or for you, or chartered by or for you, will be treated in the same manner as though the action were in personam against you.

**23. PRIMARY AND NON-CONTRIBUTORY TO OTHER INSURANCE**

With respect to any person or organization that is an additional insured under this Coverage Part, the following is added to Paragraph **4.** of **Section IV – Commercial General Liability Conditions** and supersedes any provision to the contrary:

If you have agreed in writing in a contract or agreement that this insurance is primary and non-contributory relative to an additional insured's own insurance, then this insurance is primary and we will not seek contribution from that other

G-144041-D
(Ed. 12/10)

insurance. For the purpose of this Provision **23.**, the additional insured's own insurance means insurance on which the additional insured is a Named Insured.

This Provision **23.** does not apply in situations where the endorsement on this policy affording coverage to the additional insured specifies that this insurance is excess over any other insurance available to that additional insured.

**24. LIMITED CONTRACTUAL LIABILITY FOR PERSONAL AND ADVERTISING INJURY**

**A.** Subparagraph **e.** of Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in writing in a contract or agreement in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the contract or agreement; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

Solely for the purposes of liability so assumed in a contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

**(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same contract or agreement; and

**(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** The following is added to **Section I – Supplementary Payments – Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a contract or agreement, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

**a.** Agrees in writing to:

**(1)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(3)** Notify any other insurer whose coverage is available to the indemnitee; and

**(4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**b.** Provides us with written authorization to:

**(1)** Obtain records and other information related to the "suit"; and

**(2)** Conduct and control the defense of the indemnitee in such "suit."

5002000625086468527845

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

G-144041-D
(Ed. 12/10)

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph A.2.e.(2) above, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph A.2.e.(2)(c) above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

1.   We have used up the applicable limit of insurance in the payment of judgments or settlements; or

2.   The conditions set forth above, or the terms of the agreement described in Paragraph 6. above, are no longer met.

C.   This Provision 24. does not apply if **Section I – Coverage B – Personal And Advertising Injury Liability** is excluded by endorsement.

G-144041-D
(Ed. 12/10)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 10 of 10

**CNA**

G-145658-A
(Ed. 11/03)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – SILICA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to **Exclusions** of **Section I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This insurance does not apply to:

1. "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "silica"; or

2. "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "silica".

**B.** The following exclusion is added to **Exclusions** of **Section I – COVERAGE B. PERSONAL AND ADVERTISING LIABILITY:**

This insurance does not apply to "personal and advertising injury" arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "silica".

**C.** The following definition is added:

"Silica" means the chemical compound silicon dioxide ($SiO2$) in any form, including dust which contains "silica".





G-300304-A
(Ed. 05/06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION – NON-CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **2., Exclusions,** of **Section I – Coverage A – Bodily Injury and Property Damage Liability:**

This insurance does not apply to:

**Fungi and Microbes**

**(1)** "Bodily injury" arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes." This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense. But this exclusion does not apply where your business is food processing, sales, or serving, and the "bodily injury" is caused solely by food poisoning in connection with such processing, sales, or serving.

**(2)** "Property damage" arising out of or relating to the actual, alleged or threatened contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

**(3)** Any loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

**B.** The following exclusion is added to Paragraph **2., Exclusions,** of **Section I – Coverage B – Personal and Advertising Injury Liability:**

This insurance does not apply to:

**Fungi and Microbes**

**(1)** "Personal and advertising injury " arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any "fungi" or "microbes."

**(2)** Any loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assessing the effects of "fungi" or "microbes" by any insured or by anyone else.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury, loss, cost or expense.

**C.** The following definitions are added to **Section V – Definitions:**

"Fungi" means any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut or mushroom, and including any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungi. But "fungi" does not include any fungi intended by the insured for consumption.

"Microbe" means any non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease. "Microbe" includes any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of microbes. But "microbe" does not mean microbes that were transmitted directly from person to person.

**D.** The following condition is added to **Section IV – Commercial General Liability Conditions:**

**Arbitration**

For "property damage," the determination of what portion of a loss is attributable to "fungi" and "microbes," and what portion is not, shall be made by us. If you disagree with that determination, you and we agree to submit to binding arbitration according to the Commercial Arbitration Rules of the American Arbitration Association, or according to such other rules as you and we agree to. If binding arbitration of insurance disputes is not allowed in the state where you are incorporated (or, if you are not a corporation, the state where you are domiciled), then arbitration shall be non-binding, and shall only proceed if both you and we agree to enter into it. The arbitration will be held in the county where you are headquartered, or at such other location as may be jointly agreed to by the arbitrators. Each party will bear its own arbitration costs.



**CNA**

G-43316-C
(Ed. 06/98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE FORM
FARM COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
POLLUTION LIABILITY COVERAGE FORM

This insurance does not apply to:

(1) "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened exposure at any time to asbestos; or

(2) Any loss, cost or expense that may be awarded or incurred:

    (a) by reason of a claim or "suit" for any such injury or damage; or

    (b) in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of asbestos.

Asbestos means the mineral in any form whether or not the asbestos was at any time:

(1) airborne as a fiber, particle or dust;

(2) contained in or formed a part of a product, structure or other real or personal property;

(3) carried on clothing;

(4) inhaled or ingested; or

(5) transmitted by any other means.



G-43316-C
(Ed. 06/98)

Page 1 of 1



G-43815-C
(Ed. 08/01)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**The provisions of this endorsement apply only as respects Employee Benefit Liability Coverage afforded hereunder.**

**SECTION I – COVERAGES** is amended to include the following:

**EMPLOYEE BENEFITS LIABILITY**

1.  **Insuring Agreement.**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission of:

        (1) The insured; or

        (2) Any other person for whose acts the insured is legally liable;

        if such act, error or omission is committed in the administration of your "employee benefit program." We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any report of a negligent act, error or omission and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE** of this endorsement; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A and B** of the Commercial General Liability Coverage Form to which this endorsement is attached.

    b.  This insurance applies only to negligent acts, errors or omissions which:

        (1) Take place in the "coverage territory and

        (2) Occur during the policy period; or

        (3) Occurred prior to the policy period where:

            (a) There is no other insurance which:

                (I) is valid and collectible; or

                (II) would be valid and collectible but for the exhaustion of the limits of insurance;

            (b) The insured had no prior knowledge or could not reasonably have foreseen any circumstances which might result in a claim or "suit":

            (c) The claim or "suit" is brought during the policy period; and

            (d) The insured notifies us in writing.

2.  **Exclusions.**

    This insurance does not apply to:

    a.  Loss arising out of a:

        (1) Dishonest;

        (2) Fraudulent;

        (3) Criminal; or

        (4) Malicious

        act, error or omission committed by an insured;

    b.  "Bodily injury, property damage" or "personal and advertising injury";

    c.  Loss arising out of discrimination;

    d.  Loss arising out of failure of performance of a contract by an Insurer;

    e.  Loss arising out of insufficient funds to meet an obligation under a plan included in the "employee benefit program";

    f.  Claim or "suit" based upon:

        (1) Failure of an investment to perform as represented by any insured; or

        (2) Advice given to a person to participate or not participate in a plan included in the "employee benefit program".

    g.  Loss arising out of your failure to comply with mandatory provisions of laws concerning:

        (1) Workers' Compensation;

        (2) Unemployment Insurance;

        (3) Social Security;

        (4) Disability benefits; or

        (5) Any similar law.



G-43815-C
(Ed. 08/01)

Page 1 of 3

h. Loss arising out of liability of an insured as a fiduciary under:

    (1) EMPLOYEE RETIREMENT INCOME SECURITY ACT of 1974; or

    (2) INTERNAL REVENUE CODE of 1986 (including the INTERNAL REVENUE CODE of 1954); and

their amendments.

**SECTION II – WHO IS AN INSURED,** is deleted in its entirety and replaced by the following:

1. If you are designated in the Commercial General Liability Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner,

    b. A partnership or Joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct or your business,

    c. An organization other than a partnership or joint venture, you are an insured. Your directors and stockholders are also insureds, but only with respect to their liability as your directors or stockholders.

2. Each of the following is also an insured:

    a. Each of your partners, executive officers and employees who is authorized to administer your "employees benefit program."

    b. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Commercial General Liability Declarations.

**SECTION III – LIMITS OF INSURANCE,** is deleted in its entirety and replaced by the following:

1. **Limits of Insurance.**

    a. The Limits of Insurance shown in the Supplemental Schedule and the rules below fix the most we will pay regardless of the number of:

        (1) Insureds;

        (2) Claims made or "suits" brought;

        (3) Persons or organizations making claims or bringing "suits";

        (4) Acts, errors or omissions which result in loss; or

        (5) Plans included in your "employee benefit program";

    b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions committed in the "administration" of your "employee benefit program";

    c. Subject to **b.** above, the Each Employee Limit is the most we will pay for all damages sustained by any one employee, including the employee's dependants and beneficiaries, because of acts, errors or omissions committed in the "administration" of your employee benefit program."

Limits of Insurance of this Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes determining the Limits of Insurance.

2. **Deductible.**

    a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Supplemental Schedule as applicable to Each Employee. The Limits of Insurance applicable to Each Employee will be reduced by the amount of this deductible. The Aggregate limit will not be reduced by the application of such deductible.

    b. The terms of this insurance, including those with respect to;

        (1) Our right and duty to defend "suits" seeking those damages; and

        (2) Your duties in the event of an act, error, omission, claim or "suit":

    apply irrespective of the application of the deductible amount.

    c. We may pay any part or all of the deductible amount to effect settlement of claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**SECTION IV – CONDITIONS** is amended as follows:

1. Item **2., Duties In the Event of Occurrence, Claim or Suit,** is deleted in its entirety and replaced by the following:

G-43815-C
(Ed. 08/01)

**Duties In the Event of Act, Error, Omission, Claim or Suit.**

a.  You must see to it that we are notified promptly in writing of an act, error or omission, which may result in a claim. Notice should include:

   (1) How, when and where the act, error or omission took place; and

   (2) The names and addresses of injured persons and witnesses;

b.  If a claim is made or "suit" is brought against an Insured, you must see to it that we receive prompt written notice of the claim or "suit":

c.  You and any other involved Insured must:

   (1) Immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or "suit":

   (2) Authorize us to obtain records and other information:

   (3) Cooperate with us in the:

      (a) Investigation;

      (b) Settlement; or

      (c) Defense;

      of the claim or "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against a person or organization which may be liable to the Insured because of injury or damage to which this Insurance may also apply.

d.  No insured will, except at their own cost, voluntarily:

   (1) Make a payment;

   (2) Assume an obligation; or

   (3) Incur an expense;

   without our consent.

2.  Item **4., Other Insurance,** is deleted in its entirety and replaced by the following:

   **Other Insurance.**

   Except for a loss which is the result of a negligent act, error or omission which occurred prior to the policy period, if other valid and collectible insurance is available to the Insured for a loss we cover under this endorsement, our obligations are limited as follows:

a.  **Primary Insurance**

   This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

b.  **Method of Sharing**

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it:

   (1) Has paid its applicable limit of insurance; or

   (2) None of the loss remains;

   whichever comes first.

   If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**SECTION V – DEFINITIONS** is amended as follows:

The following definitions are added:

   "Employee benefit program" means the following plans:

a.  Group life insurance, group accident or health insurance, profit sharing plans, pension plans and stock distribution plans: provided that no one other than an employee may subscribe to such insurance or plans;

b.  Unemployment insurance, social security benefits, workers' compensation and disability benefits;

c.  Other similar plan designated in the Supplemental Schedule or added by endorsement.

   "Administration" means:

a.  Counseling employees, including their dependents and beneficiaries, with respect to the "employee benefit program";

b.  Handling records in connection with the "employee benefit program"; or

c.  Effecting or terminating an employee's participation in a plan included in the "employee benefit program";

   "Employee" means your officers and employees, whether actively employed, disabled or retired.

5002000625035458627950



**CNA**

G-55157-B
(Ed. 02/88)

# PREMIUM BASES
## To be used with the General Liability Schedule

| | | |
|---|---|---|
| A | = Area | (Per 1,000 Sq. ft.) |
| AC | = Acres | (Each) |
| AN | = Animals | (Each) |
| AP | = Airports | (Each) |
| AT | = Attendants | (Each) |
| B | = Bodies | (Each) |
| BD | = Beds | (Each) |
| BE | = Beaches | (Each) |
| BO | = Boats | (Each) |
| C | = Total Cost | (Per $1,000 of Total Cost*) |
| CD | = Camper Days | (Each Camper Day) |
| CN | = Contestants | (Each) |
| CU | = Convention Days | (Each) |
| DB | = Drawbridges | (Each) |
| DM | = Dams | (Each) |
| DW | = Dwellings | (Each) |
| E | = Each | (Per Entity Described) |
| EX | = Exhibitions | (Each) |
| FG | = Fairgrounds | (Each) |
| FM | = Faculty Members | (Each) |
| FP | = Fishing Piers | (Each) |
| G | = Graduates | (Each) |
| GA | = Games | (Each) |
| GS | = Grandstands/Bleacher | (Each) |
| HQ | = Headquarters | (Each) |
| HO | = Hoists | (Each) |
| K | = Kennels | (Each) |
| LD | = Locations Days | (Each) |
| LE | = Lessees | (Each) |
| LO | = Locations | (Each) |

| | | |
|---|---|---|
| LR | = Lakes/Reservoirs | (Each) |
| M | = Admissions | (Per 1,000 Admissions) |
| ME | = Members | (Each) |
| MI | = Miles | (Each) |
| MH | = Model Homes | (Each) |
| O | = Operators | (Each) |
| OE | = Operating Expenditures | (Per $1,000 of OperatingExpenditures) |
| P | = Payroll | (Per $1,000 of Payroll*) |
| PD | = Passenger Days | (Per 1,000 Passenger Days) |
| PP | = Parks/Playgrounds | (Each) |
| PR | = Parades | (Each) |
| PS | = Persons | (Each) |
| PG | = Picnic Grounds | (Each) |
| PU | = Pupils | (Each) |
| R | = Receipts | (Per $1,000 of Receipts) |
| RG | = Registrants | (Each) |
| RN | = Range | (Each) |
| S | = Gross Sales | (Per $1,000 of Gross Sales*) |
| SC | = Scouts | (Each) |
| SE | = Seats | (Each) |
| SP | = Swimming Pools | (Each) |
| ST | = Stations | (Each) |
| TE | = Teams | (Each) |
| TO | = Towers | (Each) |
| U | = Unit | (Per Dwelling Unit) |
| VE | = Vehicles | (Per 1,000 Vehicles) |
| VO | = Volunteers | (Each) |
| Z | = Zoos | (Each) |



# INSURANCE PREMIUM AUDIT

**An accurate audit benefits you and your business.**

### What is it and why do you need it?

A premium audit is a determination of the actual insurance exposures for the coverages you have based on an examination of your operation, records and books of account.

When your policy is issued, your premium is estimated based on your business circumstances and information provided at that time. An audit establishes the correct premium base for your insurance coverage by verifying actual exposures. After your audit, an adjustment will be made to the premium that was estimated at issuance.

**An audit is necessary after the expiration of a policy with a variable premium base such as payroll or sales.** Some types of coverage subject to audit are:

- Workers' Compensation
- General Liability
- Premises Operations Liability
- Products Completed Operations
- Automobile Liability
- Garage Liability
- Liquor Liability
- Funeral Directors Liability
- Product Recall and Replacement
- Printer's E&O Correction of Work

### Payroll Records Checklist

This list provides a good indication of the materials your auditor may need to complete your premium audit.

- Journals
- Ledgers
- Tax Reports
- Individual Earnings Cards
- Vehicle Titles
- Registrations or Ownership
- Cash Disbursements Tax Reports

You can also expect your auditor to observe your business operations and ask questions about your records.

### Keeping good records may save you time and money

If you are eligible for allowable credits based on insurance manual classification and rating rules, you will need to provide the necessary records and detail to take advantage of the credits. Payroll (remuneration for services performed by an employee) is the basis for many insurance premiums. Remuneration includes any money paid for services, or any substitute for money, such as:

- Bonuses
- Vacation, holiday or sick pay
- Wages or commissions
- Payments for piece work
- Profit sharing plans
- Value of board, lodging
- Overtime
- Tool allowance
- Statutory payments
- Store certificates
- Other substitutes for cash

### Scheduling the Audit

As the time for your audit approaches, a staff auditor from CNA or one of our authorized vendors will contact you to schedule the audit. Our current vendors are: Information Providers Inc. (IPI); and U.S. Insurance Services (USI).

### Payroll Records Guidelines

Overtime – Show overtime pay in excess of straight time pay separately by employee and in summary by classification of work by state.*

Division of Payroll – Division of payroll between classifications may be allowed for certain construction and other types of risks. Where division of payroll is allowed, individual employee payroll records should show the number of hours and amount of payroll for each type of work. Without such records, the full salary must be charged to the employee's highest rated classification. Division of payroll is not available for outside sales persons (8742), auto salesperson (8748), clerical (8810), clerical telecommuter (8871) and drivers (7380).

Subcontractors – CNA requires all subcontractors hired by you to carry General Liability and/or Umbrella Liability limits of at least $1 million on an occurrence-based policy. Prior to allowing a subcontractor to work for you, you should obtain a Certificate of Insurance from the subcontractor evidencing these minimum limits. At final audit, we will examine the Certificates of Insurance for all work subcontracted during the policy term. Any subcontracted work for which we are not provided a Certificate of Insurance and any subcontracted work which was insured with liability limits less than $1 million will be converted to ratable payroll on your policy, resulting in an additional premium charge owed by you. To prevent this additional premium charge and to reduce the risk of your General Liability coverage being applied to cover claims that arise from work performed by your subcontractors, you must obtain Certificates of Insurance evidencing $1 million in liability limits from all of your subcontractors.

Prevailing Wage – For policyholders in PA, DE, NJ and CA, contact your CNA premium auditor for details concerning the records required relating to cash payments in lieu of prevailing fringe benefits.

*PA, DE and NV do not allow overtime credit for Workers' Compensation coverage. Overtime credit is allowed in all states for General Liability coverages.

### Please contact us with questions

For policyholders in:
CT, DE, DC, MA, MD, ME, NH, NJ, NY, PA, RI, VA, VT, WV

CNA Premium Audit Dept.
1 Meridian Blvd, Suite A301
Wyomissing, PA 19610
Phone: 800-847-2736
Fax: 610-208-6571

For policyholders in all other states:
CNA Premium Audit Dept.
2405 Lucien Way
Maitland, FL 32794-6240
Phone: 800-847-2736
Fax: 407-919-3610





One or more of the CNA companies provide the products and/or services described. The information is intended to present a general overview for illustrative purposes only. It is not intended to constitute a binding contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice. CNA is a registered trademark of CNA Financial Corporation. Copyright © 2014 CNA. All rights reserved.                    PREM AUDIT FLR 052014

**CNA**

G-144291-A
(Ed. 03/03)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the COMMON POLICY CONDITIONS:

### ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void **ab initio** (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.



5002000625084685627953

IL 00 03 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

INTERLINE
IL 00 21 04 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
    TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

Copyright, Insurance Services Office, Inc., 1997



"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997



333 S Wabash
Chicago, Illinois 60604

| Policy Number | From Policy Period To | Coverage Is Provided By | Agency |
|---|---|---|---|
| C5086468562 | 09/01/15  09/01/16 | National Fire Insurance of Hartford | 017201770 |

| Named Insured And Address | Agent |
|---|---|
| VIGO IMPORTING COMPANY<br>PO BOX 15584<br>TAMPA, FL  33684 | HALCYON UNDERWRITERS, INC.<br>2301 LUCIEN WAY, STE. 360<br>MAITLAND, FL 32751 |

**   PAYMENT PLAN SCHEDULE   **

IT IS AGREED THAT THE TOTAL ESTIMATED PREMIUM SHOWN IN
THE DECLARATIONS OF THIS POLICY IS PAYABLE AS FOLLOWS:

| EFFECTIVE DATE | PREMIUM |
|---|---|
| 09/01/2015 | $27,017.27 |
| 10/01/2015 | $8,970.00 |
| 11/01/2015 | $8,970.00 |
| 12/01/2015 | $8,970.00 |
| 01/01/2016 | $8,970.00 |
| 02/01/2016 | $8,970.00 |
| 03/01/2016 | $8,970.00 |
| 04/01/2016 | $8,970.00 |
| 05/01/2016 | $8,970.00 |
| 06/01/2016 | $8,970.00 |
| TOTAL PREMIUM | $107,747.27 |

ISSUE DATE 09/02/15



**END OF COPY**

1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jluster@bursor.com

**SALPETER GITKIN, LLP**
James P. Gitkin (*pro hac vice* pending)
One East Broward Boulevard, Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 467-8622
Facsimile: (954) 467-8623
E-Mail: jim@salpetergitkin.com

Attorneys for Plaintiff

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

SAN JOSE DIVISION

14

15

16

17

18

19

20

| | |
|---|---|
| LUIS DIEGO ZAPATA FONSECA, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
|                                      Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| VIGO IMPORTING CO., | |
|                                      Defendant. | |

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**PLAINTIFF'S EXHIBIT**

tabbies

B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Luis Diego Zapata Fonseca ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Vigo Importing Co. ("Vigo" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action lawsuit on behalf of purchasers of Vigo octopus products (the "Octopus Products") that Vigo has labeled and sold as octopus when in reality the products contained jumbo squid, which is significantly cheaper and of a lower quality than octopus.

2.      Independent DNA testing determined that Vigo's Octopus Products are actually jumbo squid and not octopus.  Octopus and jumbo squid are both cephalopods, but are otherwise completely different species.



**Jumbo Squid**

CLASS ACTION COMPLAINT                                                                                    1



**Octopus**

3.    The scientific classification for jumbo squid is as follows:

| Kingdom | Animalia |
| --- | --- |
| Phylum | Mollusca |
| Class | Cephalopoda |
| Order | Teuthida |
| Family | Ommastrephidae |
| Genus | Dosidicus |
| Species | Dosidicus gigas |

4.    The scientific classification Octopus is as follows:

| Kingdom | Animalia |
| --- | --- |
| Phylum | Mollusca |
| Class | Cephalopoda |

| Order | Octopoda |
|-------|----------|
| Family | Octopodidae |
| Genus | Octopus |
| Species | Octopus vulgaris |

5.      In recent years, the cost of octopus has increased rapidly as octopus populations have dwindled around the world due to over-fishing. In 2005, the European Union imposed new restrictions on octopus fishing because the octopus might be at risk of "dying out … if controls are not enforced to stop overfishing." In 2010, the Food and Agriculture Organization of the United Nations reported that octopus populations "remain overexploited." In 2014, the Monterey Bay Aquarium issued a report on the state of octopus stocks around the world. The report concluded that "octopus stocks are in poor shape." In July, 2014, SeafoodSource.com reported that octopus supplies had fallen by 45 percent in approximately one year, causing a dramatic increase in the price of octopus.

6.      At the same time that octopus populations have been declining, jumbo squid populations have been thriving. In 2010, Scientific American magazine reported that "[a]lthough many of the Pacific Ocean's big species are floundering, one large creature of the deep seems to be flourishing. The Humboldt squid (Dosidicus gigas, also known as jumbo squid, owing to its sizable nature) has been steadily expanding its population and range." On May 11, 2013, Stanford biologist William Gilly gave a TED talk in which he explained that the jumbo squid is thriving due to its ability to adapt to changing ocean conditions caused by global warming.

7.      As a result of these developments, the cost of octopus has risen dramatically compared to the cost of squid. In addition, due to similarities in texture, squid can easily be substituted for octopus without the consumer being able to tell the difference particularly when sold in a sauce like garlic sauce or marinara sauce.

8.      Vigo sells two different Octopus Products at issue in this case: (1) Octopus in Marinade Sauce and (2) Octopus in Soy and Olive Oil. The word "Octopus" is prominently

displayed on the label of each box in a large font as shown below. Nowhere on the box does it state that the Octopus Products contain squid instead of octopus.



9.     Plaintiff is informed and believes that Vigo has intentionally replaced the octopus in its Octopus Products with squid as a cheap substitute to save money because it knew an ordinary consumer would have trouble distinguishing the difference.

10.     Plaintiff asserts claims on behalf of himself and a nationwide class of purchasers of Vigo octopus products for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, violation of California's Consumers Legal Remedies Act ("CLRA"), violation of California's Unfair Competition Law ("UCL"), violation of California's False Advertising Law ("FAL"), negligent misrepresentation, and fraud.

**PARTIES**

11.     Plaintiff Luis Diego Zapata Fonseca is a citizen of California who resides in Salinas, California.     While living in California, Plaintiff purchased Vigo Octopus Products through Amazon.com.  Throughout the class period, he has purchased Vigo Octopus in Soy and Olive Oil.

Plaintiff purchased the Vigo Octopus Products in reliance on the representation that they contained octopus, and he would not have purchased the Vigo Octopus Products on the same terms if he had known that they contained squid instead of octopus.

12.     Defendant Vigo Importing Co. is a Florida corporation with its principal place of business in Tampa, Florida.  Vigo is a food manufacturer and distributor.  Vigo focuses primarily on serving Hispanic communities.  Vigo products are sold in stores across the United States including Target, K-Mart, Wal-Mart, CVS, and Wegmans.  Vigo products are also sold extensively online at Amazon.com.

13.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of Vigo, that allegation shall mean that Vigo did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and most members of the proposed class are citizens of states different from Vigo.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff is a citizen of California and resides in this District, and purchased Vigo octopus products in this District.  Moreover, Vigo distributed and sold the Octopus Products, which is the subject of the present complaint, in this District.

## CLASS REPRESENTATION ALLEGATIONS

16.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Octopus Products (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

17.     Plaintiff also seeks to represent a subclass of all Class members who purchased the Octopus Products in California (the "Subclass").

18.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through Vigo's distribution records and third party retailers and vendors.

19.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: whether Vigo's Octopus Products are squid rather than octopus; whether Vigo warranted that its Octopus Products were octopus when in fact they were squid; and whether Vigo committed statutory and common law fraud by doing so.

20.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased Vigo Octopus Products in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

21.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

22.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Vigo's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Vigo's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Breach of Express Warranty

23.  Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

24.  Plaintiff brings this claim individually and on behalf of the proposed Class against Vigo.

25.  Vigo, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that its Octopus Products contained octopus.

26.  In fact, the Octopus Products contain squid instead of octopus and Vigo's express warranties that the Octopus Products contained octopus are therefore false.

27.  As a direct and proximate cause of Vigo's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised.

## COUNT II

### Breach of the Implied Warranty of Merchantability

28.  Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

29.  Plaintiff brings this claim individually and on behalf of the proposed Class against Vigo.

CLASS ACTION COMPLAINT                                                                 7

30.     Vigo, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Octopus Products contained octopus.

31.     Vigo breached the warranty implied in the contract for the sale of its Octopus Products because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Octopus Products contained squid instead of octopus. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Vigo to be merchantable.

32.     Plaintiff and Class members purchased the Octopus Products in reliance upon Vigo's skill and judgment and the implied warranties of fitness for the purpose.

33.     The Octopus Products were not altered by Plaintiff or Class members.

34.     The Octopus Products were defective when it left the exclusive control of Vigo.

35.     Vigo knew that the Octopus Products would be purchased and used without additional testing by Plaintiff and Class members.

36.     The Octopus Products were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

37.     As a direct and proximate cause of Vigo's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised.

## COUNT III

### Breach of the Implied Warranty of Fitness for a Particular Purpose

38.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

---

CLASS ACTION COMPLAINT                                                                        8

39.     Plaintiff brings this claim individually and on behalf of the proposed Class against Vigo.

40.     Vigo marketed, distributed, and/or sold the Octopus Products with implied warranties that they were fit for their intended purposes in that they contained octopus.  At the time that the Octopus Products were sold, Vigo knew or had reason to know that Plaintiff and Class members were relying on its skill and judgment to select or furnish a product that was suitable for sale.

41.     Plaintiff and Class members purchased the Octopus Products in reliance upon Vigo's implied warranties.

42.     The Octopus Products were not altered by Plaintiff or Class members.

43.     As a direct and proximate cause of Vigo's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised.

## COUNT IV

### Unjust Enrichment

44.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45.     Plaintiff brings this claim individually and on behalf of the proposed Class against Vigo.

46.     Plaintiff and Class members conferred benefits on Vigo by purchasing the Octopus Products.

47.     Vigo has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Octopus Products.  Retention of those moneys under these circumstances is unjust and inequitable because Vigo misrepresented that the Octopus Products

contained octopus when in fact they contained squid. These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Octopus Products if the true facts were known.

48.   Because Vigo's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Vigo must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT V

### Violation of California's Consumers Legal Remedies Act,

### California Civil Code §§ 1750, *et seq.*

### (Injunctive Relief Only)

49.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50.   Plaintiff brings this claim individually and on behalf of the proposed Subclass against Vigo.

51.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

52.   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

53.   Vigo violated this provision by misrepresenting that its Octopus Products contained octopus when in fact they contained squid.

54.   Plaintiff and the Subclass suffered injuries caused by Vigo because:  (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised.

55.     On or about April 18, 2016, a CLRA notice letter was served on Vigo which complies in all respects with California Civil Code § 1782(a).  Plaintiff sent Vigo a letter via certified mail, return receipt requested, advising Vigo that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  If Vigo fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for damages as permitted by Civil Code § 1782(d).

56.     Wherefore, at this time, Plaintiff only seeks injunctive relief for this violation of the CLRA.

## COUNT VI

### Violation of California's Unfair Competition Law,

### California Business & Professions Code §§ 17200, *et seq.*

57.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

58.     Plaintiff brings this claim individually and on behalf of the proposed Subclass against Vigo.

59.     Vigo is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

60.     Vigo's  misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

61.     Vigo's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

CLASS ACTION COMPLAINT                                                                                          11

62.     Vigo violated the "fraudulent" prong of the UCL by making misrepresentations about the Octopus Products, as described herein.

63.     Plaintiff and the Subclass lost money or property as a result of Vigo's UCL violations because:  (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised.

## COUNT VII

### Violation of California's False Advertising Law,

### California Business & Professions Code §§ 17500, *et seq.*

64.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

65.     Plaintiff brings this claim individually and on behalf of the proposed Subclass against Vigo.

66.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

67.     Vigo committed acts of false advertising, as defined by §17500, by misrepresenting that its Octopus Products contained octopus when in fact they contained squid.

68.     Vigo knew or should have known, through the exercise of reasonable care that its representations about the Octopus Products were untrue and misleading.

---

Case 8:16-cv-01494-SDM-JSS   Document 1   Filed 06/10/16   Page 88 of 103 PageID 88
Case 5:16-cv-02055-NC   Document 1   Filed 04/19/16   Page 14 of 17

69.     Vigo's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

70.     Plaintiff and the Subclass lost money or property as a result of Vigo's FAL violations because:  (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised.

## COUNT VIII

### Negligent Misrepresentation

71.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiff brings this claim individually and on behalf of the proposed Class against Vigo.

73.     As discussed above, Vigo misrepresented that the Octopus Products contained octopus when in fact they contained squid.  Vigo had a duty to disclose this information.

74.     At the time Vigo made these representations, Vigo knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

75.     At an absolute minimum, Vigo negligently misrepresented and/or negligently omitted material facts about the Octopus Products.

76.     The negligent misrepresentations and omissions made by Vigo, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Octopus Products.

77.     Plaintiff and Class members would not have purchased the Octopus Products if the true facts had been known.

78.     The negligent actions of Vigo caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

CLASS ACTION COMPLAINT

13

**COUNT IX**

**Fraud**

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the proposed Class against Vigo.

81.     As discussed above, Vigo provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about its Octopus Products, including but not limited to the fact that it contained squid when the product was represented to contain octopus.  These misrepresentations and omissions were made with knowledge of their falsehood.

82.     The misrepresentations and omissions made by Vigo, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Octopus Products.

83.     Vigo's fraudulent actions caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Vigo, as follows:

a.     For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent members of the Class and Subclass;

b.     For an order declaring that Vigo's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 19, 2016

**BURSOR & FISHER, P.A.**

By:   */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jluster@bursor.com

**SALPETER GITKIN, LLP**
James P. Gitkin (*pro hac vice* pending)
One East Broward Boulevard, Suite 1500
Ft. Lauderdale, FL 33301
Telephone: (954) 467-8622
Facsimile: (954) 467-8623
E-Mail: jim@salpetergitkin.com

*Attorneys for Plaintiff*

1

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

2

I, Luis Diego Zapata Fonseca, declare as follows:

3

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal

4

knowledge of the facts stated herein and, if called as a witness, I could and would testify

5

competently thereto.

6

2.      The compliant I in this action is filed in the proper place because I purchased Vigo

7

Importing Company octopus products in this District and Defendant conducts a substantial amount

8

of business in this District.

9

I declare under the penalty of perjury under the laws of the State of California that the

10

foregoing is true and correct, executed on April 15, 2016 at Salinas, California.

11

12
                                            Diego Zapata F.
                                            Luis Diego Zapata Fonseca

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



*333 S. Wabash Ave.  Chicago  IL  60604*

*Catherine Gardner*
*Claim Consultant*
*Complex Claims*
*Telephone   503-431-3078*
*catherine.gardner@cna.com*

May 13, 2016

**Certified Mail – Return Receipt Requested**

Mrs. Alessandra Rose Alessi Cole
Vigo Importing Company
4701 West Comanche Avenue
Tampa, Florida 33614

|  | | |
|---|---|---|
| RE: | Claim No.: | E2D45247 |
|  | Insured: | Vigo Importing Company |
|  | Date of Loss: | Unspecified |
|  | Policy No.: | 5086468562 |
|  | Policy Dates: | 9/1/13-9/1/14 |
|  |  | 9/1/14-9/1/15 |
|  |  | 9/1/15-9/1/16 |
|  | Issuing Company: | National Fire Insurance Company of Hartford ("NFICH") |

Dear Mrs. Alessi Cole:

We understand that Vigo Importing Company ("Vigo") is in receipt of a putative class action lawsuit filed by Luis Diego Zapata Fonseca.  We need to advise you that there is no coverage under the National Fire Insurance Company of Hartford ("NFICH") policy for this matter.

Allegations

Suit is filed as a putative class action complaint by Luis Diego Zapata Fonseca against Vigo Importing Company in the U.S. District Court, Northern District of California, San Jose Division. The class action lawsuit is brought on behalf of purchasers of Vigo octopus products (the "Octopus Products") that Vigo has allegedly labeled and sold as octopus when in reality the products contained jumbo squid.

Vigo sells the Octopus Products at issue in the case: (1) Octopus in Marinade Sauce and (2) Octopus in Soy and Olive Oil. The word "Octopus" is prominently displayed on the label of each box. Vigo has allegedly intentionally replaced the octopus in its Octopus Products with squid as a cheap substitute to save money because it knew an ordinary consumer would have trouble distinguishing the difference.



PLAINTIFF'S
EXHIBIT

tabbies®

C

Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Octopus Products (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale. Plaintiff also seeks to represent a subclass of all Class members who purchased the Octopus Products in California (the "Subclass").

The Complaint contains the following counts:

Count I-Breach of Express Warranty

Count II-Breach of the Implied Warranty of Merchantability

Count III-Breach of the Implied Warranty of Fitness for a Particular Purpose

Count IV-Unjust Enrichment

Count V-Violation of California's Consumers Legal Remedies Act, California Civil Code Sections 1750, *et seq.* (Injunctive Relief Only)

Count VI-Violation of California's Unfair Competition Law, California Business & Professions Code Sections 17200, *et seq.*

Count VII-Violation of California's False Advertising Law, California Business and Professions Code Sections 17500, *et seq.*

Count VIII-Negligent Misrepresentation

Count IX-Fraud

Plaintiff prays for class certification, injunctive relief, compensatory and punitive damages, prejudgment interests, restitution, and attorney's fees and costs.


**The Policy**


NFICH issued a primary general liability policy to Vigo Importing Company on a General Liability Coverage Form (CG001 – 4/13) with the effective date of 9/1/13-9/1/14.  The policy contains the Each Occurrence Limits of $1,000,000, Personal and Advertising Injury limits of $1,000,000 and a General Aggregate of $2,000,000.

The insuring agreement to the policy, in part, pertains to claims asserting "bodily injury" or "property damage" arising out of an "occurrence", as set forth in Coverage A.  The policy defines "bodily injury", by endorsement, as follows:

*"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.*

The policy defines "property damage" in relevant part as follows:

*"Property damage" means:*

a.  *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it: or;*

b.  *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

   *For the purposes of this insurance, electronic data is not tangible property.*

   *As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

The policy defines "occurrence" as follows:

*"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

The Underlying Suit does not allege an "occurrence" that caused "bodily injury" or "property damage".

In addition, Coverage A contains the following exclusions:

a.  *Expected Or Intended Injury*

   *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

b.  *Contractual Liability*

   *"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

   (1)  *That the insured would have in the absence of the contract or agreement; or*

   (2)  *Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily*

3

injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*    *    *

k. Damage To Your Product

Property damage" to "your product" arising out of it or any part of it.

*    *    *

m. Damage to Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*    *    *

p. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

n. Recall of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

4

    *(1)     "Your product";*

    *(2)     "Your work"; or*

    *(3)     "Impaired property";*

*If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

Even if the putative Class Action lawsuit alleged "property damage" arising out of an "occurrence", coverage would be precluded based upon the Damage To Your Product exclusion. Your "product" is defined as:

    *(1)   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

      *(a) You;*

      *(b) Others trading under your name; or*

      *(c) A person or organization whose business or assets you have acquired; and*

    *(2)   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

      *b. Includes:*

    *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

    *(2) The providing of or failure to provide warnings or instructions….*

In addition, the Damage To Impaired Property Or Property Not Physically Injured would preclude coverage for any claims regarding the products' failure to did not have the characteristics, ingredients, uses or benefits as promised. Lastly, if these products are recalled, the Recall Of Products, Work Or Impaired Property exclusion would apply to preclude coverage for the recall. Moreover, if there is any claim for inability to access or lost data, the Electronic Data exclusion would apply.

Accordingly, NFICH disclaims overage for the putative Class Action lawsuit, including any duty to defend Vigo Importing Company under Coverage A of the policy as Plaintiff does not assert a claim for "bodily injury" or "property damage" arising out of an "occurrence", as set forth in Coverage A.

The insuring agreements of the policy also pertain to "personal and advertising injury" in addition to "bodily injury" and "property damage" arising out of an "occurrence", as set forth in Coverage B.

The policy defines "personal and advertising injury" as injury "arising out of one or more of the following offenses":

a.   *False arrest, detention or imprisonment;*

b.   *Malicious prosecution;*

c.   *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;*

d.   *Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;*

e.   *Oral or written publication, in any manner, of material that violates a person's right of privacy;*

f.   *The use of another's advertising idea in your "advertisement"; or*

g.   *Infringing upon another's copyright or slogan in your "advertisement."*

The Manufacturers General Liability Endorsement broadens the definition of "personal and advertising injury" to include discrimination and humiliation.

The allegations set forth in the Complaint do not suggest that any one of the enumerated "personal and advertising injury" offenses has been committed.  The Plaintiff does not allege any facts that would suggest false arrest, detention or imprisonment, malicious prosecution, or wrongful eviction. The putative Class Action Complaint does not allege libel, slander or product disparagement, and does not assert that the Defendant violated any person's right of privacy in an oral or written publication of material about the individual. Nor are there any allegations that the Defendant used any other entity's ideas in its advertisements, or that the Defendant infringed upon a copyright or slogan used or held by the Plaintiff.  Nor are there allegations of discrimination or humiliation. The putative Class Action Complaint does not include any allegations that could be construed as asserting "personal and advertising injury"; Vigo Importing Company's request for defense and indemnity, therefore, could not be one for damages because of "personal and advertising injury."

With respect to "personal and advertising injury", the policy contains the following exclusions:

a.   *Knowing Violation Of Rights Of Another*

   *"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."*

b.   *Material Published With Knowledge Of Falsity*

   *"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.*

   * * *

f.   *Breach Of Contract*

   *"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."*

g.   *Quality Or Performance Of Goods – Failure To Conform To Statements*

   *"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."*

h.   *Wrong Description Of Prices*

   *"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."*

6

These exclusions may apply to further limit or preclude coverage for this matter.

National Fire Insurance Company of Hartford reserves all rights to disclaim coverage, including any duty to defend, based upon Exclusion 2.a. to the extent that the putative Class Action Complaint alleges that Vigo Importing Company had knowledge that the alleged wrongdoing would violate the rights of another.

National Fire Insurance Company of Hartford reserves all rights to disclaim coverage, including any duty to defend, based upon Exclusion 2.b. to the extent that Vigo Importing Company had knowledge of the falsity of the alleged wrongdoing.

In the putative Class Action Complaint, Plaintiff makes a breach of warranty claim.  Any claims for breach of contract would be precluded from coverage based upon the breach of contract exclusion, which precludes coverage for "personal and advertising injury" arising out of a breach of contract.

National Fire Insurance Company of Hartford reserves all rights to disclaim coverage, including any duty to defend, based upon Exclusion 2.g. and 2.h. to the extent the any alleged "personal and advertising injury" arises out of the failure of goods, products or services to conform with any statement of quality or performance or the wrong description.

Accordingly, National Fire Insurance of Hartford disclaims overage for the putative Class Action lawsuit, including any duty to defend  Vigo Importing Company under Coverage B, the policy's "personal and advertising injury" coverage.

The Plaintiff prays for class certification, damages, injunctive relief, punitive damages, prejudgment interest and attorney's fees and costs. The term damages, as used in the commercial general liability coverage form, refers to actual and compensatory damages.  Any declaratory, statutory or punitive relief sought are not damages under the policy.  The policy only agrees to *pay those sums that the insured becomes legally obligated to pay as damages* for a covered claim.  In addition, attorneys' fees are not covered. Moreover, to the extent that coverage for punitive damages is against public policy, National Fire Insurance of Hartford disclaims coverage because of public policy and California Insurance Code Section 533.

## Conclusion

For the reasons set out above, National Fire Insurance Company of Hartford has determined that NFICH has no obligation to defend or indemnify Vigo Importing Company in connection with the Underlying Suit.  NFICH fully reserves and retains all of its rights under the terms of its policy and under the law.

The above evaluation of coverage is not intended to be exhaustive, and there may be other terms and conditions of the NFICH policy, which, although not specifically mentioned in this letter, may apply to this claim.  Also, this evaluation is based upon the information that is presently available to NFICH.  If you are aware of additional information that you believe may affect the coverage determination and make it appropriate for NFICH to revisit their analysis, please forward it immediately to the undersigned.

The actions of NFICH in investigating, evaluating, and/or monitoring this matter should not be seen or construed as a waiver, estoppel or other relinquishment of its rights to limit or deny coverage, nor

as an admission of any obligation under any policy issued by them or any other entity operating under the "CNA" service mark.

By limiting policy references to those cited, NFICH does not waive any other policy provisions.  The NFICH policy, in its entirety, is incorporated by reference as if they had been stated in full, and NFICH reserves the right to cite additional policy provisions as may be appropriate.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, subchapter 8, Unfair Claims Settlement Practices Regulations, we are required to advise you that you may have this matter reviewed by the California Department of Insurance, located at 300 South Spring Street, South Tower, Los Angeles, CA 90013.  The phone number is (800) 927-4357.

If you have any questions or comments in response to the foregoing, please do not hesitate to contact the undersigned.

Sincerely,


Catherine Gardner
National Fire Insurance Company of Hartford

cc: John Watts
    Watts, Dawson and Associates, Inc.
    3439 Brook Crossing Dr.
    Brandon, FL  33511

    Halycon Underwriters, Inc.
    2301 Lucien Way, Suite 360
    Maitland, FL 32751-7025

# Austin & Laurato

### A Professional Association
### Attorneys At Law

PERSONAL INJURY, WRONGFUL DEATH, AND FIRST PARTY INSURANCE MATTERS
EXCLUSIVELY REPRESENTING PLAINTIFFS

| *Tampa Office* | **ATTORNEYS** | *Ocala Office* |
|---|---|---|
| 1902 WEST CASS STREET | *Robert M. Austin, Esq.* | 6035 S.W. 54TH ST |
| TAMPA, FLORIDA 33606 | *Michael P. Laurato, Esq.* | SUITE 101 |
| (813) 258-0624 TELEPHONE | | OCALA, FLORIDA 34474 |
| (813) 258-4625 FACSIMILE | WWW.AUSTINLAURATO.COM | (352) 671-9004 TELEPHONE |
| | | (352) 671-9005 FACSIMILE |

REPLY TO: TAMPA

June 2, 2106

**VIA CERTIFIED MAIL—RETURN RECEIPT REQUESTED**
**VIA ELECTRONIC MAIL (catherine.gardner@cna.com)**
Catherine Gardner
Claim Consultant
Complex Claims
CAN/National Fire Insurance Company of Hartford
333 S. Wabash Avenue
Chicago, IL 60604

      Re:    Claim No.:    E2D45247
                  Insured:     Vigo Importing Co.
                  Policy No.:   5086468562

Dear Ms. Gardner:

Please note your file that my firm has been retained to represent the above-referenced insured with regard to its insurer's duty to defend and duty to indemnify on the California Class Action lawsuit you have previously been provided notice and a copy of. Please direct future correspondence to this office.

I have received and reviewed your claim denial letter of May 13, 2016 disclaiming any coverage, duty to defend, and duty to indemnify for the occurrence reported. The negligence, property damage, unjust enrichment, and recall allegations of the complaint give rise to a duty to defend under applicable Florida law and this precise liability policy language—that is a settled-matter of judicial case authority. Because this policy was delivered in Florida, it is Florida law which governs this insurance issue. Request is hereby made against the insurer to assume defense of the lawsuit. Please advise at the first opportunity if the insurer to assume defense of this action.

In a related fashion, demand is hereby made upon the insurer for reimbursement of legal expenses and attorney's fees expended by my client in defense of the lawsuit, which its insurer

PLAINTIFF'S
EXHIBIT

D

had a duty to provide, but disclaimed. Please advise if the insurer will reimburse my client for those costs and fees incurred.

Also, please be advised that there has been an offer extended to resolve the lawsuit for $250,000.00. I have attached a copy of the settlement offer for your review. Please note that this is a time-dated settlement offer, which expires June 7, 2016. Demand is hereby made that the insurer accept this offer, pay that amount, and obtain a full release for my client in exchange. The offer is well within my client's limits and it represents a reasonable offer. Please advise if the insurer will accept this offer, pay the amount to the plaintiff, and obtain a release for my client. If the insurer refuses to do so, please advise of whether the insurer will authorize my client to accept the offer and obtain a release, without prejudicing any of its rights under the insurance policy to seek reimbursement for costs of defense, including attorneys' fees and indemnity for the settlement amount in the separate federal declaratory judgment and breach of contract action which will be filed in the United States District Court for the Middle District of Florida by my client against its insurer.

Finally, please find enclosed a civil remedy notice of insurer violation which has been filed with the Florida Department of Financial Services/Insurance Commissioner. This notice is being provided to the insurer to provide it with the statutory opportunity to cure the violations within the prescribed time and to perfect a statutory cause of action, as provided by law, if the insurer does not timely cure the violations. Your written response to the civil remedy notice of insurer violation is statutorily required. Please provide me with the courtesy of a copy of your response once it is filed.

Thank you for your attention to these matters and your prompt response to the inquiries in this letter is appreciated. For your reference, this is a claim's correspondence, as defined by the Florida Insurance Code, and your prompt response is required by statute. Of course, I am available to speak with you about any questions you may have. Please do not hesitate to contact me.

Sincerely,

AUSTIN & LAURATO, P.A.

Michael V. Laurato

CC: Alessandra Alessi
Encl:  Offer to Settle
       Civil Remedy Notice of Insurer Violation



333 S. Wabash Ave.  Chicago  IL  60604

Catherine Gardner
Claim Consultant
Complex Claims
Telephone   503-431-3078
catherine.gardner@cna.com

June 6, 2016

**Sent via Electronic Mail and Certified Mail – Return Receipt
Requested**

Michael Laurato, Esq.
Austin and Laurato
1902 West Cass Street
Tampa, Florida 33606

RE:   Claim No.:           E2D45247
        Insured:            Vigo Importing Company
        Date of Loss:       Unspecified
        Policy No.:         5086468562
        Policy Dates:       9/1/12-/1/13
                            9/1/13-9/1/14
                            9/1/14-9/1/15
                            9/1/15-9/1/16
        Issuing Company:    National Fire Insurance Company of Hartford
                            ("NFICH")
        Case:               Luis Diego Zapata Fonseca v. Vigo Importing
                            Company U.S.D.C. Northern District of California-
                            San Jose Division, Case No. '5:16-cv-02055-NC

Dear Mr. Laurato:

We have reviewed your June 2, 2016 correspondence wherein you demand that National Fire
Insurance of Hartford  reimburse  legal expenses and attorney's fees expended by your client,
Vigo Importing Co., in defense of the lawsuit, as well as accept and pay plaintiff's 250,000
demand, which expires on June 7, 2016. Your correspondence included a Civil Remedy Notice of
Insurer Violation which has been filed with the Florida Department of Financial
Services/Insurance Commissioner.

We have considered the contentions made in your June 2, 2016 letter concerning coverage for
the subject claim under the National Fire Insurance of Hartford policies and find that you have
provided no new information or legal basis that supports coverage for Vigo Importing Co. and,
accordingly, National Fire Insurance of Hartford stands on its denial of coverage as set forth in
my May 13, 2016 letter. Consequently, National Fire Insurance of Hartford will not be
contributing to the defense or indemnity of this matter and Vigo Importing Co. should take
whatever action it deems appropriate to protect its interests with respect to the pending



PLAINTIFF'S
EXHIBIT

E

settlement demand . With respect to the Civil Remedy Notice, National Fire Insurance of Hartford will respond accordingly within the statutory time frame.

National Fire Insurance of Hartford fully reserves and retains all of its rights under the terms of its policies and under the law.  If you are in possession of any additional information that you believe may affect coverage under the National Fire Insurance of Hartford policies, beyond what you have provided to date, please forward such information to the undersigned.

Should you have any questions, please let me know.

Sincerely,


Catherine Gardner
National Fire Insurance Company of Hartford