# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**VIGO IMPORTING COMPANY,**

          **Plaintiff,**

**v.**

**NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD,**

          **Defendant.**

**Case No.  8:16-cv-1494-T-23JSS**

## NATIONAL FIRE INSURANCE COMPANY OF HARTFORD'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD ("NFICH"), by and through its undersigned attorneys, hereby files this answers and asserts affirmative defenses to the Complaint and Demand for Jury Trial [D.E. #1] filed by Plaintiff, VIGO IMPORTING COMPANY ("Vigo"), and files a Counterclaim for Declaratory Judgment against Vigo.  Upon knowledge, information, and belief, NFICH states as follows:

### PARTIES

1.      Admitted for jurisdictional purposes only.

2.      Admitted that NFICH issued a Policy No. C 5086468562 ("NFICH 15-16 Policy") to Vigo Importing Company, effective from September 1, 2015 to September 1, 2016. The NFICH Policy includes Commercial General Liability ("CGL") Coverage, subject to its terms, conditions, limitations, definitions, and exclusions.  A copy of the 15-16 Policy is attached as Exhibit "A" to the Complaint, but NFICH is without knowledge as whether Exhibit "A" is a complete copy of the 15-16 Policy, and therefore denies, that Exhibit "A" to the Complaint is a complete copy of the NFICH 15-16 Policy.

**THE POLICY OF INSURANCE**

3.      Admitted that the NFICH Policy's Commercial General Liability Coverage Form contains the quoted language from the Insuring Agreements of Coverage A and Coverage B, subject to the 15-16 Policy's terms, exclusions, definitions, limitations, and conditions, and the 15-16 Policy speaks for itself.  To the extent that Plaintiff has misquoted the policy language from the Insuring Agreements of Coverage A and Coverage B of the 15-16 Policy's CGL Form, the allegations are denied.

4.      Admitted that the NFICH 15-16 Policy's Section V—Definitions of the CGL Coverage Form contains the quoted portions of the definitions for "property damage," "your product," "your work," "occurrence," and "suit," and complete definitions are contained in the 15-16 Policy, which speaks for itself.  To the extent that Plaintiff has misquoted any of the definitions contained in the 15-16 Policy, the allegations are denied.

**THE OCTOPUS LAWSUIT AND INSURANCE CLAIM**

5.      Admitted that Luis Diego Zapata Fonseca, individually and on behalf of all others similarly situated, ("Underlying Plaintiffs") filed a Class Action Complaint ("Underlying Complaint") against Vigo in the underlying putative class action lawsuit styled, *Luis Diego Zapata Fonseca v. Vigo Importing Company*, Case No. 5:16-CV-02055-NC, in the U.S. District Court, Northern District of California, San Jose Division ("Underlying Lawsuit") and that a copy of the Underlying Complaint is attached as Exhibit "B" to Plaintiff Vigo's Complaint.  The Underlying Complaint speaks for itself as to its allegations and Prayer for Relief.  The remaining allegations are denied.

6.      On April 27, 2016, NFICH received notice of the Underlying Lawsuit, and Vigo requested defense and indemnity from NFICH.  The remaining allegations are denied.

2

7.     Admitted that NFICH issued a disclaimer letter to Vigo denying a duty to defend and indemnify Vigo in connection with the Underlying Lawsuit on May 13, 2016 and that a copy of NFICH's May 13, 2016 disclaimer letter is attached as Exhibit "C" to Plaintiff Vigo's Complaint.   The remaining allegations are denied.

8.     NFICH is without knowledge of the allegations in Paragraph 8, and therefore, the allegations are denied.  The 15-16 Policy's limits of liability are stated in the 15-16 Policy and the 15-16 Policy speaks for itself.

9.     Admitted that a copy of a June 2, 2016 letter form Michael V. Laurato, Esq., counsel for Vigo, is attached as Exhibit "D" to Plaintiff Vigo's Complaint and that the June 2, 2016 letter speaks for itself.  Otherwise, denied

10.    Admitted that a copy of a June 6, 2016 letter form Catherine Gardner, on behalf of NFICH, is attached as Exhibit "E" to Plaintiff Vigo's Complaint and that the June 6, 2016 letter speaks for itself.  Otherwise, denied

11.    NFICH is without knowledge of the allegations in Paragraph 11, and therefore, the allegations are denied.

## COUNT I
### (Declaratory Judgment)

12.    NFICH realleges and incorporates by reference its responses to the allegations contained in paragraphs 1 through 11 above.

13.    NFICH is without knowledge of the allegations in Paragraph 13, and therefore, the allegations are denied.

14.    NFICH is without knowledge of the allegations in Paragraph 14, and therefore, the allegations are denied.

15.    NFICH is without knowledge of the allegations in Paragraph 15, and therefore, the allegations are denied.

16.    NFICH is without knowledge of the allegations in Paragraph 16, and therefore, the allegations are denied.

17.    NFICH is without knowledge of the allegations in Paragraph 17, and therefore, the allegations are denied.

The allegations and relief sought by Vigo in the Wherefore clause, including all subparts (a) through (g), are denied.

## COUNT II

### (Breach of Contract)

18.    NFICH realleges and incorporates by reference its responses to the allegations contained in paragraphs 1 through 11 above.

19.    NFICH is without knowledge of the allegations in Paragraph 19, and therefore, the allegations are denied.

20.    Denied.

21.    NFICH is without knowledge of the allegations in Paragraph 21, and therefore, the allegations are denied

22.    NFICH is without knowledge of the allegations in Paragraph 22, and therefore, the allegations are denied

The allegations and relief sought by Vigo in the Wherefore clause are denied.

## AFFIRMATIVE DEFENSES

NFICH asserts the following Affirmative Defenses:

## FIRST AFFIRMATIVE DEFENSE

NFICH pleads as defenses, any and all terms, conditions, exclusions, definitions and limitations of the 15-16 Policy, as if set forth herein.

## SECOND AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the Underlying Plaintiffs' Underlying Complaint does not allege "bodily injury" or "property damage" caused by an "occurrence" during the policy period within the Insuring Agreement of Coverage A and as defined in the 15-16 Policy.

## THIRD AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage A is subject to the Expected or Intended Injury Exclusion (a), which bars coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

## FOURTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage A is subject to the Contractual Liability Exclusion (b), which bars coverage for "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

## FIFTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage A is subject to the Damage to Your

Product Exclusion (k), which bars coverage for "property damage" to "your product" arising out of it or any part of it. Your "product" is defined under the 15-16 Policy as:

    (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a)    You;
        (b)    Others trading under your name; or
        (c)    A person or organization whose business or assets you have acquired; and

    (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

        b.    Includes:
           (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
           (2)    The providing of or failure to provide warnings or instructions….

**SIXTH AFFIRMATIVE DEFENSE**

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage A is subject to the Damage to Impaired Property or Property Not Physically Injured Exclusion (m), which bars coverage for:

    "Property damage" to "impaired property" or property that has not been physically injured arising out of:

    (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**SEVENTH AFFIRMATIVE DEFENSE**

NFICH does not owe Vigo a duty to defend or indemnify in connection with the

Underlying Lawsuit because the 15-16 Policy's Coverage A is subject to the Electronic Data Exclusion (p), which bars coverage for:

> Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
>
> As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

## EIGHTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage A is subject to the Recall of Products, Work Or Impaired Property Exclusion (n), which bars coverage for:

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
> (2) "Your work"; or
> (3) "Impaired property";
>
> If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## NINTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the Underlying Plaintiffs' Underlying Complaint does not allege "personal and advertising injury" caused by an offense arising out of your business that was committed in the "coverage territory" during the policy period within the Insuring Agreement of Coverage B and as defined in the 15-16 Policy. The 15-16 Policy defines "personal and

advertising injury" as injury "arising out of one or more of the following offenses":

    a.       False arrest, detention or imprisonment;

    b.       Malicious prosecution;

    c.       The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.       Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.       Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.       The use of another's advertising idea in your "advertisement"; or

    g.       Infringing upon another's copyright or slogan in your "advertisement."

The 15-16 Policy's Manufacturers' General Liability Extension Endorsement broadens the definition of "personal and advertising injury" to include "discrimination or humiliation," as stated in the endorsement. The Underlying Complaint does not include any allegations that could be construed as asserting "personal and advertising injury" under Coverage B of the 15-16 Policy and therefore, NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit.

## TENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage B is subject to the Knowing Violation Of Rights Of Another Exclusion (a), which bars coverage for:

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

## ELEVENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the

8

Underlying Lawsuit because the 15-16 Policy's Coverage B is subject to the Material Published With Knowledge Of Falsity Exclusion (b), which bars coverage for: "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

## TWELFTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage B is subject to the "Material Published Prior to Policy Period" Exclusion (c), which bars coverage for "Personal and advertising injury" "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."  To the extent that Underlying Plaintiffs' claim that is the subject of the Underlying Complaint involves "personal and advertising injury" (which is denied)  that arises out of the oral or written publication of material whose first publication took place before the 15-16 Policy's policy period, the 15-16 Policy's Coverage B does not afford coverage to Vigo for Underlying Plaintiffs' claim.

## THIRTEENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage B is subject to the Breach Of Contract Exclusion (f), which bars coverage for: "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

## FOURTEENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage B is subject to the Quality Or

Performance Of Goods – Failure To Conform To Statements Exclusion (g), which bars coverage for: "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

## FIFTEENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy's Coverage B is subject to the Wrong Description Of Prices Exclusion (h), which bars coverage for: "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

## SIXTEENTH AFFIRMATIVE DEFENSE

Under the 15-16 Policy, NFICH agrees to pay those sums that the insured becomes legally obligated to pay as damages to which the insurance applies. The term damages, as used in the commercial general liability coverage form of the 15-16 Policy, refers to actual and compensatory damages. Any declaratory, statutory and/or punitive relief sought by Underlying Plaintiffs against Vigo in the Underlying Lawsuit are not damages under the 15-16 Policy.

## SEVENTEENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because the 15-16 Policy only apply to risks that are fortuitous and would not apply to risks that an insured knew or should have known were substantially certain to occur

## EIGHTEENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because statutory penalties are not considered damages under the 15-16 Policy as a matter of public policy and/or California Insurance Code Section 533.

## NINTEENTH AFFIRMATIVE DEFENSE

NFICH does not owe Vigo a duty to defend or indemnify in connection with the Underlying Lawsuit because Vigo did not provide timely notice of the Underlying Plaintiffs' claim.

## TWENTIETH AFFIRMATIVE DEFENSE

The Policies include an "Other Insurance" provision under the 15-16 Policy's Commercial General Liability Conditions. To the extent that any other insurance affords coverage to Vigo in connection with the Underlying Lawsuit, the priority of the insurance and a proper allocation of loss or damage among the other insurers is required.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

If any coverage is determined to exist under the 15-16 Policy, NFICH may be entitled to contribution, indemnification, off-set and/or have a right of subrogation from other sources, including but not limited to any other insurers, third-parties, and any third-parties' insurers.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief can be granted.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff fails to join all indispensable and/or necessary and interested parties.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be barred by the doctrines of unclean hands, laches, waiver, or estoppel.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

NFICH intends to rely upon such other defenses as may become legally available hereafter or become apparent during discovery proceedings in this case and hereby reserves its

right to amend its Answer to assert any such defense.

WHEREFORE, NFICH prays that a judgment be entered against Plaintiff Vigo:

(A.)     Denying all relief requested by Plaintiff Vigo;

(B.)     Awarding NFICH reasonable costs, expenses and attorney's fees to the extent permitted by law and such other relief as this Court may deem just and proper.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD ("NFICH"), by and through its undersigned attorneys, hereby sets forth its Counterclaim for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure against Plaintiff/Counter-Defendant, VIGO IMPORTING COMPANY ("Vigo").  In support, NFICH alleges:

## NATURE OF ACTION AND RELIEF SOUGHT

1.     This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purposes of determining the rights and obligations, if any, relative to insurance policies.

2.     An actual, immediate controversy exists among the parties regarding whether coverage is afforded under the subject insurance policies for the claims and alleged damages that are the subject of the underlying lawsuit styled, *Luis Diego Zapata Fonseca v. Vigo Importing Company*, Case No. 5:16-CV-02055-NC, in the U.S. District Court, Northern District of California, San Jose Division ("Underlying Lawsuit")

3.     NFICH seeks a declaration that it owes no duty to defend and indemnify Vigo under policies of insurance issued by NFICH in connection with the claims and alleged damages that are the subject of the Underlying Lawsuit.

4.     NFICH's rights and obligations pursuant to the insurance policies are dependent

upon this court's interpretation of the insurance policies' terms, conditions, limitations, provisions, exclusions, definitions, and endorsements.

## PARTIES

5.      At the time of the commencement of this action, NFICH was an insurance company organized an existing under the laws of the State of Illinois whose principal place of business was located in Chicago, Illinois.

6.      At the time of the commencement of this action, upon information and belief, Vigo was a Florida company whose principal place of business was located in Tampa, Florida.

## JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

## UNDERLYING LAWSUIT

9.      On or about April 19, 2016, Luis Diego Zapata Fonseca, individually and on behalf of all others similarly situated, ("Underlying Plaintiffs") filed a Class Action Complaint against Vigo in the Underlying Lawsuit.  A copy of the Class Action Complaint ("Underlying Complaint") in the Underlying Lawsuit is attached hereto as **Exhibit "A,"** and is incorporated by reference herein.

10.      In the Underlying Complaint, Underlying Plaintiffs assert that the aggregate claims of all member members of the proposed class are in excess of $5 Million Dollars,

exclusive of interest and costs, and allege the following counts against Vigo: (I) Breach of Express Warranty; (II) Breach of the Implied Warranty of Merchantability, (III) Breach of the Implied Warranty of Fitness for Particular Purpose; (IV) Unjust Enrichment; (V) Violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et. seq*. (Injunctive Relief Only); (VI) Violation of California's Unfair Competition Law, California Business & Professions Code §§17200, *et. seq*.; (VII) Violation of California's False Advertising Law, California Business & Professions Code §§ 17500, *et. seq*.; (VIII) Negligent Misrepresentation; and (IX) Fraud. (Ex. A).

11.     In the Underlying Complaint, Underlying Plaintiffs alleges that Vigo is a manufacturer, marketer, distributor, and/or seller (Ex A, ¶¶ 25, 30) of Octopus Products: (1) Octopus in Marinade Sauce; (2) Octopus in Soy and Olive Oil. (Ex A, ¶8). In the Underlying Complaint, Underlying Plaintiffs allege that the word "Octopus" "is prominently displayed on the label of each box in a large font. (Ex. A, ¶8). However, "[n]owheer on the box does it state that Octopus Products contain squid instead of octopus." (Ex. A, ¶8).

12.     In the Underlying Complaint, Underlying Plaintiffs assert that "Vigo has intentionally replaced the octopus in its Octopus Products with squid as a cheap substitute to save money because it knew an ordinary customer would have trouble distinguishing the difference." (Ex. A., ¶9).

13.     In the Underlying Complaint, Underlying Plaintiffs are "all persons in the United States who purchased the Octopus Products (the "Class")", but "[e]xcluded from the Class are persons who made such purchase for purpose of resale." (Ex. A, ¶16). In the Underlying Complaint, Underlying Plaintiffs also seek to represent a subclass of all Class members who purchased the Octopus Products in California (the "Subclass"). (Ex. A, ¶17).

14.     Under Count (I)—Breach of Express Warranty in the Underlying Complaint, Underlying Plaintiffs assert Vigo, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that its Octopus Products contained octopus," (Ex. A, ¶25), and "[i]n fact, the Octopus Products contain squid instead of octopus and Vigo's express warranties that the Octopus Products contained octopus are therefore false." (Ex. A, ¶26).

15.     As a direct and proximate cause of Vigo's alleged breach of express warranty set forth under Count (I)—Breach of Express Warranty in the Underlying Complaint, Underlying Plaintiffs claim they "have been injured and harmed because: (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised." (Ex. A, ¶27).

16.     Under Count (II)—Breach of the Implied Warranty of Merchantability in the Underlying Complaint, Underlying Plaintiffs assert:

> 31.     Vigo breached the warranty implied in the contract for the sale of its Octopus Products because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Octopus Products contained squid instead of octopus. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Vigo to be merchantable.

(Ex. A, ¶31).     Under Count (II) of the Underlying Complaint, Underlying Plaintiffs further assert [t]he Octopus Products were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted." (Ex. A, ¶36).

17.     As a direct and proximate cause of Vigo's alleged breach of the implied warranty set forth under Count (II) of the Underlying Complaint, Underlying Plaintiffs "have been injured

and harmed because: (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised."

18.     Under Count (III)—Breach of the Implied Warranty of Fitness for a Particular Purpose in the Underlying Complaint, Underlying Plaintiffs assert "Vigo marketed, distributed, and/or sold the Octopus Products with implied warranties that they were fit for their intended purposes in that they contained octopus." (Ex. A, ¶40).  As a direct and proximate cause of Vigo's alleged breach of the implied warranty set forth under Count (III) of the Underlying Complaint, Underlying Plaintiffs "have been injured and harmed because: (a) they would not have purchased the Octopus Products on the same terms if they had known the true facts that the Octopus Products contained squid instead of octopus; (b) they paid a price premium for the Octopus Products due to Vigo's promises that it contained octopus; and (c) Vigo's Octopus Products did not have the characteristics, ingredients, uses or benefits, as promised." (Ex. A, ¶43).

19.     Under Count (IV)—Unjust Enrichment in the Underlying Complaint, Underlying Plaintiffs assert Vigo has been unjustly enriched in retaining the revenues derived from Underlying Plaintiffs' purchases of the Octopus Products and that retention of those moneys is unjust and inequitable because "Vigo misrepresented that the Octopus Products contained octopus when in fact they contained squid." (Ex. A, ¶47).  Underlying Plaintiffs further allege under Count (IV) of the Underlying Complaint that "[t]hese misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Octopus Products if the

true facts were known." (Ex. A, ¶47).

20.     Under Count (V)—Violation of California's Consumers Legal Remedies Act, California Civil Code §§ 1750, et. seq. (Injunctive Relief Only) of the Underlying Complaint, Underlying Plaintiffs assert California's Consumers Legal Remedies Act, Cal. Civ. Code§ 1770(a)(9), ("CLRA") prohibits "[a]dvertising goods or services with intent not to sell them as advertised" and that "Vigo violated this provision by misrepresenting that its Octopus Products contained octopus when in fact they contained squid," causing Underlying Plaintiffs' injuries. (Ex. A, ¶52-54).  Under Count (V) of the Underlying Complaint, Underlying Plaintiffs "only seeks injunctive relief for this violation of the CLRA." (Ex. A, ¶56).

21.     Under Count (VI)—Violation of California's Unfair Competition Law, California Business & Professions Code §§17200, et. seq of the Underlying Complaint, Underlying Plaintiffs assert California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising...." and that "Vigo's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA." (Ex. A, ¶59-60).   Under Count (VI) of the Underlying Complaint, Underlying Plaintiffs claim they lost money or property as a result of Vigo's UCL violations. (Ex. A, ¶63).

22.     Under Count (VII)—Violation of California's False Advertising Law, California Business & Professions Code §§ 17500, *et. seq.* of the Underlying Complaint, Underlying Plaintiffs assert "Vigo committed acts of false advertising, as defined by § 17500, by misrepresenting that its Octopus Products contained octopus when in fact they contained squid." (Ex. A, ¶67). Under Count (VI) of the Underlying Complaint, Underlying Plaintiffs assert "Vigo

knew or should have known…that its representations about the Octopus Products were untrue and misleading" and Vigo's actions were "false and misleading such that the general public is and was likely to be deceived." (Ex. A, ¶68-69).   Under Count (VI) of the Underlying Complaint, Underlying Plaintiffs claim they lost money or property as a result of Vigo's FAL violations. (Ex. A, ¶63).

23.     Under Count (VIII)—Negligent Misrepresentation of the Underlying Complaint, Underlying Plaintiffs assert "Vigo misrepresented that the Octopus Products contained octopus when in fact they contained squid," and "Vigo knew or should have known that these representations were false or made them without knowledge of their truth or veracity." (Ex. A, ¶73-74).   Underlying Plaintiffs further assert under Count (VIII) of the Underlying Complaint that "[a]t an absolute minimum, Vigo negligently misrepresented and/or negligently omitted material facts about the Octopus Products" and that they are entitled to damages and other legal and equitable relief.  (Ex. A, ¶75, 78).

24.     Under Count (IX)—Fraud of the Underlying Complaint, Underlying Plaintiffs assert Vigo provided them with "false or misleading material information and failed to disclose material facts about its Octopus Products, including but not limited to the fact that it contained squid when the product was represented to contain octopus" and that "[t]hese misrepresentations and omissions were made with knowledge of their falsehood." (Ex. A, ¶81). Underlying Plaintiffs further assert under Count (IX) of the Underlying Complaint that Vigo's "fraudulent actions" caused damage to them, entitling them to damages and other legal and equitable relief. (Ex. A, ¶83).

25.     In the Underlying Complaint, Underlying Plaintiffs pray for class certification, injunctive relief, compensation and punitive damages, prejudgment interest, restitution, and

attorneys' fees, expenses and costs.    (Ex. A, Prayer for Relief).

26.     On April 27, 2016, Vigo requested that NFICH defend and indemnify it against the Underlying Complaint in the Underlying Lawsuit.

27.     By letter dated May 13, 2016, NFICH denied coverage, for defense and indemnity, to Vigo in connection with Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit. [D.E. #1, Ex. C].

## POLICIES

28.     NFICH issued Policy No. C 5086468562 (the "Policy") to Vigo with Commercial General Liability ("CGL") Coverage for consecutive one-year policy periods from September 1, 2012 through September 1, 2016 (collectively the "Policies").  A copy of the Policy effective from September 1, 2012 to September 1, 2013 ("12-13 Policy") is attached hereto as **Exhibit "B,"** and is incorporated by reference herein.  A copy of the Policy effective from September 1, 2013 to September 1, 2014 ("13-14 Policy") is attached hereto as **Exhibit "C,"** and is incorporated by reference herein.  A copy of the Policy effective from September 1, 2014 to September 1, 2015 ("14-15 Policy") is attached hereto as **Exhibit "D,"** and is incorporated by reference herein.  A copy of the Policy effective from September 1, 2015 to September 1, 2016 ("15-16 Policy") is attached hereto as **Exhibit "E,"** and is incorporated by reference herein

29.     The Policies include CGL Coverage with Limits of Insurance of $1 Million Each Occurrence, $1 Million Personal & Advertising Injury, and $2 Million General Aggregate. (Exs. B, C, D and E, Declarations, Limits of Insurance).

30.     The Insuring Agreement of Coverage A of the Policies' CGL Coverage Part states, in pertinent part, as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or

> resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Exs. B, C, D and E, CGL Coverage Form, Section I(A)1.(a.), Insuring Agreement).

31.    The Policies include the following definitions for "bodily injury," "occurrence," "coverage territory," "property damage," and "your product" under Section V—Definitions:

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death....

* * *

**4**.    "Coverage territory" means:

a.    The United States of America (including its territories and possessions), Puerto Rico and Canada;

* * *

c.    All other parts of the world if the injury or damage arises out of:

(1)    Goods or products made or sold by you in the territory described in Paragraph a. above;

* * *

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**17.**    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property…

* * *

**21.**    Your "product":

a.    Means:

(1)     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(a)     You;
(b)     Others trading under your name; or
(c)     A person or organization whose business or assets you have acquired; and

(2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.     Includes:

(1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2)     The providing of or failure to provide warnings or instructions….

(Exs. B, C, D, and E, CGL Coverage Form, Section V—Definitions and Manufacturers' General Liability Extension Endorsement, 17).

32.     The Insuring Agreement of Coverage B of the Policies' CGL Coverage Part states, in pertinent part, as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)**     The amount we will pay for damages is limited as

described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Exs. B, C, D and E, CGL Coverage Form, Section I(B)1.(a.), Insuring Agreement).

33. The Policies include the following definition for "personal and advertising injury," under Section V—Definitions:

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Exs. B, C, D, and E, CGL Coverage Form, Section V—Definitions). The Policies'

Manufacturers' General Liability Extension Endorsement broadens the definition of "personal and advertising injury" to include "discrimination or humiliation," as stated in the endorsement. (Exs. B, C, D, and E, Manufacturers' General Liability Extension Endorsement, 16(A)(h)).

34. The Policies also contain the following Exclusions to Coverage A:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

\* \* \*

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or

alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**k.**     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your     product" or "your work"; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**     "Your product";

**(2)**     "Your work"; or

**(3)**     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage A(2)).

35.     The Policies also contain the following Exclusions to Coverage B:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

* * *

**2.      Exclusions**

    **a.          Knowing Violation Of Rights Of Another**

        "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

    **b.          Material Published With Knowledge Of Falsity**

        "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c.          Material Published Prior to Policy Period**

        "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

* * *

    **f.          Breach Of Contract**

        "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

    **g.          Quality Or Performance Of Goods – Failure To Conform To Statements**

        "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

    **h.          Wrong Description Of Prices**

        "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

* * *

(Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage B(2))).

36.     The Policies include an "Other Insurance" provision under Section IV—Commercial General Liability Conditions, which states, in pertinent part: "If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method in **c.** below."  Section c. "Method of Sharing" under the "Other Insurance" provision of the Policies states "If all of the other insurance permits contribution by equal shares, we will follow this method also;" and "If any of the other insurance does not permit contribution by equal shares, we will contribute by limits." (Exs. B, C, D, and E, CGL Coverage Form, Section IV(4)).

## COUNT I-- DECLARATORY JUDGMENT-
## COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY
### (No Duty to Defend)

37.     NFICH readopts and reasserts its allegations in paragraphs 1 through 36 as if fully set forth herein.

38.     Vigo has requested that NFICH defend it in connection with the Underlying Lawsuit, and NFICH has denied Vigo a defense in the Underlying Lawsuit.

39.     An actual, immediate controversy within the meaning of 28 U.S.C. § 2201 now exists between NFICH and Vigo concerning whether Policies require NFICH to defend Vigo in the Underlying Lawsuit.

40.     NFICH does not have a duty to defend Vigo in the Underlying Lawsuit under Coverage A of the Policies' CGL Coverage because the Underlying Complaint does not allege damages because of "bodily injury" or "property damage" caused by an "occurrence" that takes place in the "coverage territory" during the policy period within the Insuring Agreement of Coverage A of the Policies. (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage A(1)).

41.     To the extent that the Underlying Complaint could implicate the Insuring Agreement of Policies' Coverage A, the following Exclusions to Coverage A relieve NFICH of a duty to defend Vigo in the Underlying Lawsuit and bar coverage for Underlying Plaintiffs' claim:  Expected Or Intended Injury Exclusion (a); Contractual Liability Exclusion (b);Damage To Your Product Exclusion (k);  Damage To Impaired Property Or Property Not Physically Injured Exclusion (m); and Recall Of Products, Work Or Impaired Property Exclusion (n).  (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage A(2)).

42.     NFICH seeks a judicial declaration that NFICH has no duty to defend Vigo in connection with the Underlying Lawsuit pursuant to the provisions of the Policies.

43.     In addition to the foregoing provisions, NFICH pleads all other conditions, terms, limitations, definitions and exclusions of the Policies that may also be found to be applicable as NFICH's investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Relief as additional and/or more specific information becomes available.

WHEREFORE, NFICH prays for a judgment that NFICH has no duty to defend Vigo under the Policies' Coverage A—Bodily Injury and Property Damage Liability against Underlying Plaintiffs' claims asserted in the Underlying Lawsuit and any other relief the court deems just and proper, including but not limited to an award of fees, expenses, and costs in this action.

## COUNT II-- DECLARATORY JUDGMENT
## COVERAGE B--PERSONAL AND ADVERTISING INJURY LIABILITY
### (No Duty to Defend)

44.     NFICH readopts and reasserts its allegations in paragraphs 1 through 36 as if fully set forth herein.

45.     Vigo has requested that NFICH defend it in connection with the Underlying

Lawsuit, and NFICH has denied Vigo a defense in the Underlying Lawsuit.

46.     An actual, immediate controversy within the meaning of 28 U.S.C. § 2201 now exists between NFICH and Vigo concerning whether Policies require NFICH to defend Vigo in the Underlying Lawsuit.

47.     NFICH does not have a duty to defend Vigo in the Underlying Lawsuit under Coverage B of the Policies' CGL Coverage because the Underlying Complaint does not allege damages because of "personal and advertising injury" caused by an offense arising out of your business committed in the "coverage territory" during the policy period within the Insuring Agreement of Coverage B of the Policies. (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage B(1)).

48.     The Policies include the following definition for "personal and advertising injury," under Section V—Definitions:

> **14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> **a.**  False arrest, detention or imprisonment;
>
> **b.**  Malicious prosecution;
>
> **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> **d.**  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **e.**  Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> **f.**  The use of another's advertising idea in your "advertisement"; or

       **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Exs. B, C, D, and E, CGL Coverage Form, Section V—Definitions). The Policies' Manufacturers' General Liability Extension Endorsement broadens the definition of "personal and advertising injury" to include "discrimination or humiliation," as stated in the endorsement. (Exs. B, C, D, and E, Manufacturers' General Liability Extension Endorsement, 16(A)(h)).

49.     The Underlying Complaint does not allege damages because of an enumerated "personal and advertising injury" offense, as defined by the Policies. (Exs. B, C, D, and E, CGL Coverage Form, Section V—Definitions, 14 and Manufacturers' General Liability Extension Endorsement, 16(A)(h)).

50.     To the extent that the Underlying Complaint could implicate the Insuring Agreement of Policies' Coverage B, the following Exclusions to Coverage B relieve NFICH of a duty to defend Vigo in the Underlying Lawsuit and bar coverage for Underlying Plaintiffs' claim: Knowing Violation Of Rights Of Another (a); Material Published With Knowledge Of Falsity (b); Material Published Prior to Policy Period (c); Breach Of Contract Exclusion (f); Quality Or Performance Of Goods – Failure To Conform To Statements Exclusion (g); and Wrong Description Of Prices Exclusion (h). (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage B(2)).

51.     NFICH seeks a judicial declaration that NFICH has no duty to defend Vigo in connection with the Underlying Lawsuit pursuant to the provisions of the Policies.

52.     In addition to the foregoing provisions, NFICH pleads all other conditions, terms, limitations, definitions and exclusions of the Policies that may also be found to be applicable as NFICH's investigation of this matter continues, and reserves the right to amend its Complaint for

Declaratory Relief as additional and/or more specific information becomes available.

WHEREFORE, NFICH prays for a judgment that NFICH has no duty to defend Vigo under the Policies' Coverage B—Personal and Advertising Injury Liability against Underlying Plaintiffs' claims asserted in the Underlying Lawsuit and any other relief the court deems just and proper, including but not limited to an award of fees, expenses, and costs in this action

**COUNT III-- DECLARATORY JUDGMENT**
**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**(No Duty to Indemnify)**

53.    NFICH readopts and reasserts its allegations in paragraphs 1 through 36 as if fully set forth herein.

54.    Vigo requested that NFICH defend and indemnify it in connection with the Underlying Lawsuit, and NFICH denied coverage, for defense and indemnity, to Vigo in connection with Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit.

55.    An actual, immediate controversy within the meaning of 28 U.S.C. § 2201 now exists between NFICH and Vigo concerning whether Policies require NFICH to indemnify Vigo against Underlying Plaintiffs' claim in the Underlying Lawsuit.

56.    NFICH does not have a duty to indemnify Vigo in the Underlying Lawsuit under Coverage A of the Policies' CGL Coverage because the Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit does not involve damages because of "bodily injury" or "property damage" caused by an "occurrence" that takes place in the "coverage territory" during the policy period within the Insuring Agreement of Coverage A of the Policies. (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage A(1)).

57.    The damages sought in the Underlying Lawsuit are not "bodily injury" or "property damage" as defined in the Policies.

58.     Some or all of the damages sought in the Underlying Lawsuit were not caused by an "occurrence" during the policy period of the Policies.

59.     Some or all of the damages sought in the Underlying Lawsuit were known by Vigo to have occurred prior to the inception of one or more of the Polices, and known damages or losses are not covered by the Policies.  The known loss provisions of the Policies preclude coverage for such damages.

60.     To the extent that Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit could implicate the Insuring Agreement of the Policies' Coverage A, which is denied by NFICH, some or all of the damages sought in the Underlying Lawsuit are excluded by the following exclusions: Expected or Intended Injury Exclusion (a); Contractual Liability Exclusion (b); Damage to Your Product Exclusion (k); Damage To Impaired Property Or Property Not Physically Injured Exclusion (m); and Recall Of Products, Work Or Impaired Property Exclusion (n).  (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage A(2)).

61.      To the extent that any other insurance may be applicable to Underlying Plaintiffs' claim against Vigo in the Underlying Lawsuit, any liability is limited as stated in the "Other Insurance" provisions contained in the Policies and a proper allocation of loss or damage among Vigo's other insurers is required.

62.     NFICH seeks a judicial declaration that NFICH has no duty to indemnify Vigo under the Policies' Coverage A in connection with the Underlying Lawsuit pursuant to the provisions of the Policies.

63.     In addition to the foregoing provisions, NFICH pleads all other conditions, terms, limitations, definitions and exclusions of the Policies that may also be found to be applicable as

NFICH's investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Relief as additional and/or more specific information becomes available.

WHEREFORE, NFICH prays for a judgment that NFICH has no duty to indemnify Vigo under the Policies' Coverage A—Bodily Injury and Property Damage Liability for Underlying Plaintiffs' claims and damages that are the subject of the Underlying Lawsuit and any other relief the court deems just and proper, including but not limited to an award of fees, expenses, and costs in this action.

## COUNT IV-- DECLARATORY JUDGMENT
## COVERAGE B--PERSONAL AND ADVERTISING INJURY LIABILITY
### (No Duty to Indemnify)

64.    NFICH readopts and reasserts its allegations in paragraphs 1 through 36 as if fully set forth herein.

65.    Vigo requested that NFICH defend and indemnify it in connection with the Underlying Lawsuit, and NFICH denied coverage, for defense and indemnity, to Vigo in connection with Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit.

66.    An actual, immediate controversy within the meaning of 28 U.S.C. § 2201 now exists between NFICH and Vigo concerning whether Policies require NFICH to indemnify Vigo against Underlying Plaintiffs' claim in the Underlying Lawsuit.

67.    NFICH does not have a duty to indemnify Vigo in the Underlying Lawsuit under Coverage B of the Policies' CGL Coverage because the Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit does not involve damages because of "personal and advertising injury" caused by an offense arising out of Vigo's business committed in the "coverage territory" during the policy period within the Insuring Agreement of Coverage B of the Policies. (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage B(1)).

68. The Policies include the following definition for "personal and advertising injury," under Section V—Definitions:

> **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> **a.** False arrest, detention or imprisonment;
>
> **b.** Malicious prosecution;
>
> **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> **f.** The use of another's advertising idea in your "advertisement"; or
>
> **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Exs. B, C, D, and E, CGL Coverage Form, Section V—Definitions). The Policies' Manufacturers' General Liability Extension Endorsement broadens the definition of "personal and advertising injury" to include "discrimination or humiliation," as stated in the endorsement. (Exs. B, C, D, and E, Manufacturers' General Liability Extension Endorsement, 16(A)(h)).

69. The damages sought in the Underlying Lawsuit are not damages because of an enumerated "personal and advertising injury" offense, as defined by the Policies. (Exs. B, C, D, and E, CGL Coverage Form, Section V—Definitions, 14 and Manufacturers' General Liability Extension Endorsement, 16(A)(h)).

70.     To the extent that Underlying Plaintiffs' claim that is the subject of the Underlying Lawsuit could implicate the Insuring Agreement of the Policies' Coverage B, which is denied by NFICH, some or all of the damages sought in the Underlying Lawsuit are excluded by the following exclusions: Knowing Violation Of Rights Of Another (a); Material Published With Knowledge Of Falsity (b); Material Published Prior to Policy Period (c); Breach Of Contract Exclusion (f); Quality Or Performance Of Goods – Failure To Conform To Statements Exclusion (g); and Wrong Description Of Prices Exclusion (h). (Exs. B, C, D, and E, CGL Coverage Form, Section I-Coverage B(2)).

51.     To the extent that any other insurance may be applicable to Underlying Plaintiffs' claim against Vigo in the Underlying Lawsuit, any liability is limited as stated in the "Other Insurance" provisions contained in the Policies and a proper allocation of loss or damage among Vigo's other insurers is required.

52.     NFICH seeks a judicial declaration that NFICH has no duty to indemnify Vigo under the Policies' Coverage B in connection with the Underlying Lawsuit pursuant to the provisions of the Policies.

52.     In addition to the foregoing provisions, NFICH pleads all other conditions, terms, limitations, definitions and exclusions of the Policies that may also be found to be applicable as NFICH's investigation of this matter continues, and reserves the right to amend its Complaint for Declaratory Relief as additional and/or more specific information becomes available.

WHEREFORE, NFICH prays for a judgment that NFICH has no duty to indemnify Vigo under the Policies' Coverage B—Personal and Advertising Injury Liability against Underlying Plaintiffs' claims asserted in the Underlying Lawsuit and any other relief the court deems just and proper, including but not limited to an award of fees, expenses, and costs in this action

## PRAYER FOR RELIEF

WHEREFORE, NFICH prays for a judgment that:

(a)     NFICH has no duty to defend Vigo under the Policies against Underlying Plaintiffs' claims asserted in the Underlying Lawsuit;

(b)     NFICH has no duty to indemnify Vigo under the Policies for Underlying Plaintiffs' claims and damages that are the subject of the Underlying Lawsuit; and

(c)     for such other relief as this Court deems just and proper, including but not limited to, an award of fees, costs, and expenses in this action.

Dated: **July 22, 2016.**

Respectfully submitted,

COLLIAU CARLUCCIO KEENER MORROW
PETERSON & PARSONS

s/ Julie K. Linhart

JULIE K. LINHART, ESQ.
Fla. Bar No. 0571601
E-mail:  Julie.Linhart@cna.com
COLLIAU CARLUCCIO KEENER MORROW
PETERSON & PARSONS
4631 Woodland Corporate Blvd., Suite 315
Tampa, Florida  33614
Telephone: (813) 880-5165
Direct Line: (813) 880-5168
Facsimile: (312) 260-6859
**Attorneys for Defendant/Counterclaimant**
**National Fire Insurance Company of Hartford**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **July 21, 2016**, I electronically filed the foregoing with the

Clerk of the Court by using the CM / ECF system which will send a notice of electronic filing to

the following CM/ECF participants on the attached Service List:

**Michael V. Laurato, Esq.**
Florida Bar No. 181447
E-Mail:  mlaurato@austinlaurato.com
**Hannah Austin, Esq.**
Florida Bar No. 113231
E-Mail: haustin@austinlaurato.com
AUSTIN & LAURATO, P.A.
1902 W. Cass Street
Tampa, Florida  33606
Phone:  813-258-0624
Fax:  813-258-4625
**Attorneys for Plaintiff Vigo Importing
Company**

s/  Julie K. Linhart
Attorney